[No. B149866. Second Dist., Div. Eight. Dec. 9, 2002.]

LORINE HARRIS, Plaintiff and Appellant, v.
MILTON GRIMES, Defendant and Respondent.

**COUNSEL**

Joseph L. Shalant and Brian A. Yapko for Plaintiff and Appellant.

Milton C. Grimes and Kristen Martin for Defendant and Respondent.

## OPINION

**RUBIN, J.**—Appellant Lorine Harris appeals from the judgment on the pleadings in her legal malpractice lawsuit against respondent Milton Grimes. After review, we reverse and remand.

### PROCEDURAL AND FACTUAL BACKGROUND

In March 1989, Gardena Police Officer David Mathieson shot and killed appellant Lorine Harris's unarmed son during the nighttime execution of a search warrant. Appellant alleges Mathieson accidentally fired his gun when a flash-bang grenade used by the police as they forced their way into the home startled Mathieson.[1] In January 1990, appellant filed wrongful death complaints against Mathieson in both federal and state court.[2] Each complaint alleged causes of action for negligence under state law and for civil rights violations under federal law. Mathieson demurred to the state court lawsuit on the ground it was duplicative of the federal lawsuit.[3] In response, appellant dismissed her state court complaint without prejudice.

Appellant's federal civil rights claim eventually went to trial, shorn by the court's edict of the negligence claim. The court explained that it feared trying both claims would confuse the jury because they involved "contradictory standards of conduct for imposing liability"—intentional conduct for the civil rights claim, but only negligence for the state law claim.

The federal jury rendered a defense verdict for Mathieson. On June 18, 1993, the federal court entered judgment for him on the civil rights cause of action. At the same time, it dismissed the negligence claim without prejudice to appellant's refiling it in state court. Citing equitable tolling principles, the court explained the dismissal was without prejudice despite the almost four-year delay between the death of appellant's son and a refiled complaint because the statute of limitations was tolled while appellant's suit was pending in federal court. (See *Addison v. State of California* (1978) 21 Cal.3d 313, 319 [146 Cal.Rptr. 224, 578 P.2d 941] (*Addison*) [statute of limitations tolled for state claim while plaintiff in good faith pursued federal claim

---

[1]In a federal trial that preceded appellant's state court action here, Mathieson apparently claimed otherwise. Although testimony from the federal trial is not in the record, it appears Mathieson claimed he was not startled, but instead fired intentionally in self-defense at an armed man near appellant's son, but accidentally hit her son instead.

[2]Appellant named other defendants, but the proceedings against them are not the basis of appellant's malpractice lawsuit against respondent and, thus, we omit any reference to them except where necessary for clarity.

[3]The demurrer is not in the record, but we surmise its thrust from appellant's response, which the record contains.

involving same events against same defendant].) The court noted that appellant had 30 days from dismissal of her negligence claim to refile it in state court. (See 28 U.S.C. § 1367(d) [statute of limitations tolled until 30 days after dismissal].) Two weeks later, on July 1, 1993, appellant refiled her state court complaint against Mathieson for negligence.

The state court set and continued the trial of appellant's negligence complaint several times. In September 1995, appellant's then attorney, Andrew Smyth, tentatively stipulated to binding arbitration of the claim. Based on the tentative stipulation, the court vacated the trial date and set a hearing in November for an order to show cause for dismissal. The court directed the parties to be prepared at the hearing to tell the court whether they agreed to arbitration. Several weeks before the hearing, appellant rejected the proposal to arbitrate, fired Smyth, and hired respondent Milton Grimes to take her negligence complaint to trial.

When appellant discharged Smyth, Smyth did not tell her or respondent about the pending order to show cause. Consequently, no one informed the court that appellant refused to arbitrate her claim. The court therefore appears to have assumed the parties had agreed to arbitration and dismissed appellant's complaint.

In July 1997, respondent learned about the dismissal. He nevertheless appears not to have moved to set it aside, perhaps because more than six months had passed. (See Code Civ. Proc., § 473, subd. (b) [permits vacating dismissal only within six months of its entry].) The following February, respondent told appellant about the dismissal. In September 1998, she filed a malpractice complaint against him. She alleged he had mishandled her negligence complaint, particularly in not appearing at the hearing on the order to show cause and in failing to move to set aside the dismissal.

Trial of the malpractice action was set for February 21, 2001. On that day, respondent moved for judgment on the pleadings, arguing appellant could not state a cause of action for malpractice because his alleged mishandling of the underlying negligence lawsuit against Mathieson did not damage her because her negligence lawsuit was untenable. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 844 [60 Cal.Rptr.2d 780] (*Mattco Forge*) [legal malpractice plaintiff must prove damages by showing through a "case within a case" that underlying lawsuit was viable].) Respondent's argument rested on the purported untimeliness of the complaint against Mathieson. According to respondent, the suit against Mathieson was time-barred because more than six months had passed since the city of Gardena's rejection in 1989 of appellant's administrative claim against him under the

Government Tort Claims Act. (Gov. Code, § 945.6, subd. (a)(1) [complaint alleging a tort by government must be filed within six months of government's rejection of administrative claim].) While conceding the negligence claim's temporary pendency in federal court tolled the statute of limitations, respondent asserted the tolling ended when the federal court's April 1992 pretrial conference order omitted the negligence claim from issues to be litigated at trial. Because appellant waited more than a year after the pretrial conference order to file her state court complaint in July 1993, respondent concluded it was time-barred.

Respondent also submitted that day a motion in limine for application of res judicata and collateral estoppel. He asserted the jury had concluded in the federal civil rights trial that Mathieson was not negligent in shooting appellant's son. Thus, respondent argued, the court should not permit appellant to relitigate Mathieson's liability.

The court did not expressly rule on respondent's motion for judgment on the pleadings, although it voiced skepticism that appellant's complaint against Mathieson was timely. The court agreed, however, that res judicata and collateral estoppel barred appellant's complaint against respondent. In reaching its decision, the court relied on the opening statement by appellant's counsel in the federal trial and the federal court's jury instructions on unreasonable force in violation of someone's civil rights. In the opening statement, appellant's counsel told the jury he expected Mathieson to deny accidentally shooting appellant's son and to claim instead that he intentionally pulled the trigger in self-defense while aiming at an armed man standing near appellant's son, but hit her son instead. Based on its review of the jury instructions and opening statement, the court concluded the federal trial had established Mathieson's shooting was "reasonable." Accordingly, appellant could not pursue Mathieson for negligence. The court therefore entered judgment for respondent. This appeal followed.

### STANDARD OF REVIEW

■ We independently review a judgment on the pleadings, and review the judgment, not the court's rationale. (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448 [37 Cal.Rptr.2d 790].) ■ " 'A defendant is entitled to judgment on the pleadings if the plaintiff's complaint does not state a cause of action. In considering whether a defendant is entitled to judgment on the pleadings, we look only to the face of the pleading under attack . . . . All facts alleged in the complaint are admitted for purposes of the motion, and the court determines whether those facts constitute a cause of action. The court also may consider matters subject to judicial notice.

[Citations.]' . . . We review an order granting judgment on the pleadings independently." (*Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 684-685 [86 Cal.Rptr.2d 592].)

## DISCUSSION

The court found the federal jury determined Mathieson's shooting of appellant's son was reasonable. According to the court, res judicata and collateral estoppel bound appellant to that determination. The court thus concluded appellant was not entitled to relitigate in her state court lawsuit against Mathieson the issue of his negligence, making her lawsuit against him untenable. (*Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441, 445-446 [164 Cal.Rptr. 913] (*Mattson*) [collateral estoppel and res judicata prevent party from relitigating issues that were or could have been tried in previous litigation].) Accordingly, appellant could not state a claim against respondent for malpractice in mishandling her lawsuit against Mathieson because such a claim presupposed she could prove Mathieson was negligent. (*Mattco Forge, supra,* 52 Cal.App.4th at p. 844 [plaintiff claiming legal malpractice must prove "case-within-a-case"].) The court therefore entered judgment on the pleadings and dismissed appellant's malpractice complaint. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii) [when a complaint on its face fails to state a cause of action, judgment on the pleadings is proper].)

■■-■■ Appellant contends the court erred in granting judgment on the pleadings because the court misapprehended the import of the federal civil rights trial.[4] We agree. The federal court expressly removed from the jury any consideration of Mathieson's negligence because it feared confusing the jury. It noted that appellant's cause of action alleging violation of her son's civil rights alleged an intention to injure her son, but her negligence claim alleged no such intention. As the federal court explained, "[S]ubmission of the negligence claim against Mathieson would have confused the jury. The jury would have had before it[] two contradictory standards of conduct for imposing liability—one that stated that liability could *not* be imposed for mere negligence and one that stated that it could. The court considers this potential for jury confusion a 'compelling reason[] for declining jurisdiction' over the negligence claim." (Original italics.) Consequently,

---

[4]Appellant contends the court compounded its error by relying on extrinsic evidence from the federal trial of her former counsel's opening statement and jury instructions. As she correctly notes, a motion for judgment on the pleadings is ordinarily limited to the face of the complaint and judicially noticed evidence. (Code Civ. Proc., § 438, subd. (d)); *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999 [79 Cal.Rptr.2d 544].) But, because appellant failed to object to admission of the extrinsic evidence, she failed to preserve the issue for appeal. (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187 [45 Cal.Rptr.2d 82] (*Baughman*) [judgment on the pleadings may rely on evidence outside the pleadings if no objection raised].)

the federal court told the jurors they could find Mathieson liable only if they concluded his shooting of appellant's son was worse than negligent. The court instructed, "In order to prove [her] claim, [appellant] must prove . . . [¶] . . . [t]hat [Mathieson] intentionally committed acts which violated [her son's] constitutional right . . . ." Furthermore, "In order to find [Mathieson] liable for violating the decedent's constitutional rights, [Mathieson] must have acted intentionally, in the sense that he intended to commit the act which resulted in the deprivation of the decedent's constitutional rights. Actions that were only negligent and not intentional do not support a finding that [Mathieson] deprived the decedent of his constitutional rights." Plainly, Mathieson's alleged negligence was never put to the federal jury.

Respondent contends the jury's verdict for Mathieson necessarily meant it found his use of deadly force was reasonable, and if it was reasonable, it was by definition not negligent. Respondent's contention fails for two reasons. First, the federal jury rendered a general verdict without any special findings. Thus, the jury could have reached its verdict for any number of reasons other than finding the shooting was a reasonable use of force. Second, and more important, "reasonable" conduct in civil rights law does not always mean reasonable conduct under negligence law. The two concepts are not the same. (See *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 287 [54 Cal.Rptr.2d 655] (*Lucas*) [reasonable conduct under federal civil rights law not the same as under state negligence law because a civil rights violation "describes a state of mind more blameworthy" than negligence]; *Mattson, supra,* 106 Cal.App.3d at p. 446 [proving a violation of civil rights requires showing defendant consciously, rather than negligently, deprived the plaintiff of his civil rights].) Indeed, if they were, the federal court would not have feared appellant's negligence claim might confuse the jury and would not have removed negligence from the jury's consideration.

■ Respondent also contends appellant's negligence lawsuit against Mathieson impermissibly split her cause of action, which was an additional reason her lawsuit against Mathieson was untenable. According to respondent, appellant suffered a single injury from a single set of circumstances: the death of her son at the hands of the police. Under California law, that injury constitutes a single cause of action. (*Lucas, supra,* 47 Cal.App.4th at p. 286.) Respondent asserts appellant improperly split her cause of action by suing under civil rights law in federal court and negligence law in state court. According to respondent, appellant was obligated to choose one court in which to sue under both theories. By proceeding solely on her civil rights claim after the federal court declined to exercise pendent jurisdiction over her negligence claim, respondent argues appellant abandoned her negligence claim and could not revive it in her state court complaint against Mathieson.

Respondent's contention does not reflect the current state of the law. *Lucas* squarely addresses respondent's contention when, as here, a federal court, instead of a party, splits a cause of action. It explained, California's prohibition on splitting causes of action "does not aid [a defendant when] it was not [the plaintiff] who made the decision to 'split' causes of action between state and federal court. [The plaintiff] tendered the entire case to the federal court, which had pendent jurisdiction to determine the state causes of action but declined to exercise it. [Citations.] A federal court's discretionary refusal to exercise pendent jurisdiction over a state claim does not bar further litigation of the state claim in state court." (*Lucas, supra,* 47 Cal.App.4th at p. 286.)

*Lucas* is consistent with the Restatement Second of Judgments' expression of widely held legal principles, which distinguishes between a party's splitting of its causes of action and a court's doing the same thing. The Restatement observes, "A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action . . . declined to exercise [its jurisdiction] as a matter of discretion[], then a second action in a competent court presenting the omitted theory or ground should be held not precluded." (Rest.2d Judgments, § 25, com. e, p. 213.)

We acknowledge a two-decade-old decision, *Mattson, supra,* 106 Cal.App.3d 441, supports respondent's contention. There, the court held, "Once it is known that the federal court will not exercise pendent jurisdiction over the state claim, plaintiff's proceeding to trial in the federal court on the federal claim alone will necessarily result in splitting the plaintiff's cause of action, and that fact should be apparent to the plaintiff. [¶] In such circumstances the rule that would best accommodate the rights of the plaintiff to fully litigate his claim and to invoke the jurisdiction of the federal court and the right of the defendant, the courts and the public to be free of multiple litigation of the same cause of action, is that once the federal court has declined to exercise pendent jurisdiction over the state claim, if the plaintiff then elects to proceed to trial and judgment in the federal court, his entire cause of action is either merged in or barred by the federal court judgment so that he may not thereafter maintain a second suit on the same cause of action in a state court." (*Id.* at p. 455.)

We decline to follow *Mattson,* however, because *Lucas* is a more recent and, as reflected by the Restatement, widely endorsed pronouncement of the

law. Moreover, *Mattson*'s holding was partly based upon its concern that a different rule would invite gamesmanship by plaintiffs. (*Mattson, supra*, 106 Cal.App.3d at p. 455) It explained, "A contrary rule would invite manipulation. It would permit a plaintiff halfheartedly to request the federal court to exercise pendent jurisdiction, offer little resistance to any argument by the defendant against its exercise, and hope that the federal court would decline to exercise pendent jurisdiction and thereby reserve to the plaintiff a second chance to prevail in a state court action should he be successful [*sic*] in the federal court. Judicious utilization of judicial and litigant resources become ever more essential in the wake of the law explosion. The efficient administration of justice would not be advanced by a rule resulting in or encouraging multiple litigation of a single cause of action." (*Ibid.*) There is no evidence of a similar worry here.

Finally, respondent contends appellant's negligence lawsuit against Mathieson was untimely.[5] Mathieson killed appellant's son on March 24, 1989. On May 26, 1989, appellant filed her claim against Mathieson under the Tort Claims Act. The City of Gardena rejected her claim on July 25, 1989. Appellant then had until January 25, 1990, to file a lawsuit against Mathieson. (Gov. Code, § 945.6, subd. (a)(1) [lawsuit against public employee must be filed within six months of denial of claim under Tort Claims Act].) Appellant timely filed her federal lawsuit in January 1990, which, respondent concedes, tolled the statute of limitations while the negligence claim was pending in federal court. (*Addison, supra*, 21 Cal.3d at p. 319.) Respondent contends that tolling ended in April 1992, however, when the federal court's pretrial order omitted the negligence claim from the federal trial because the claim was then no longer "pending" before the federal court. Because appellant did not file her state court negligence lawsuit until more than a year later in July 1993, respondent asserts the lawsuit breached the six-months statute of limitation.

Respondent's contention does not persuade us. First, respondent presents no authority that the federal court's omission of a claim from trial without entry of an order of dismissal (which came later) means the undismissed claim is no longer "pending." To the contrary, Black's Law Dictionary defines "pending" as including "hanging" or "unfinished." Those words aptly describe appellant's negligence claim during the time it dangled in limbo as a claim untried but not dismissed.

[5]When the court granted respondent's judgment on the pleadings, it mentioned that it perceived a potential statute of limitations bar to appellant's state court negligence lawsuit against Mathieson. The court did not, however, rely on this ground in dismissing appellant's malpractice complaint. Nevertheless, we address the timeliness of appellant's negligence complaint because we must affirm judgment on the pleadings if it was proper for any reason mentioned in the motion, regardless of whether the court relied on it. (*Baughman, supra*, 38 Cal.App.4th at p. 187.)

Moreover, if we were to accept respondent's characterization of events in the federal court, we would render a good portion of its final judgment a nullity. In its judgment, the federal court dismissed appellant's negligence claim without prejudice. To substantiate the nonprejudicial effect of the dismissal, the court cited *Addison, supra,* 21 Cal.3d at page 319, to note that the statute of limitations tolls a plaintiff's state court claims while the plaintiff pursues claims in federal court involving the same facts against the same defendant. In addition, the judgment cited the federal statute that tolls the statute of limitations on a claim for an additional 30 days after its dismissal by a federal court. Presumably, the court would not have wasted its breath noting the nonprejudicial nature of its dismissal of appellant's negligence claim if the court had believed the claim was not pending before it. Thus, we conclude the negligence claim remained pending until the federal court actually dismissed it in June 1993. By the court's dismissal order, the statute of limitations was tolled for 30 days after entry of dismissal, and appellant filed her negligence claim against Mathieson within that period. Hence, the complaint was timely.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings. Appellant to recover costs on appeal.

Cooper, P. J., and Boland, J., concurred.