[No. B166917. Second Dist., Div. Six. Sept. 3, 2003.]

CITY OF SIMI VALLEY et al., Petitioners, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
SIDNEY BAYER et al., Real Parties in Interest.

## COUNSEL

Nye, Peabody & Stirling and Karen K. Peabody for Petitioners.

No appearance for Respondent.

Robert Mann and Donald W. Cook for Real Parties in Interest.

## OPINION

**YEGAN, Acting P. J.**—Stephen Bayer (decedent) engaged law enforcement officers in a lethal confrontation and committed "suicide by cop," also known as "suicide by police."[1] Thereafter, decedent's family (real parties in interest; herein plaintiffs) filed an action in federal court against the City of Simi Valley, Police Chief Randy G. Adams, Police Captain Anthony Harper, and Police Lieutenant Gordon Weeks (City or police officers). The United States District Court granted summary judgment on the federal civil rights claim (42 U.S.C. § 1983) and dismissed the state causes of action (wrongful death and violation of state Constitution) without prejudice.

Plaintiffs sued in state court for wrongful death and state Constitution violations. City demurred, requested judicial notice of the federal moving and opposition papers, hearings and rulings, and argued that the action was barred by the federal judgment.

The superior court overruled the demurrer stating that it "must fail if at least one plaintiff has stated a claim for at least one right cognizable under the California Constitution. The Court [has] identified one claim (decedent's father's substantive due process right involving the constitutionally protected interest of companionship with one's child)." Citing *Bonner v. City of Santa Ana* (1996) 45 Cal.App.4th 1465 [53 Cal.Rptr.2d 671], the superior court stated "that it cannot be categorically stated that money damages are precluded for violation of the state due process clause."

---

[1] " 'Suicide by cop' refers to an instance in which a person attempts to commit suicide by provoking the police to use deadly force." (*Hainze v. Richards* (5th Cir. 2000) 207 F.3d 795, 797, fn. 1.)

"The term 'suicide by police' describes a situation in which a suicidal, distraught and often unbalanced individual comes into contact with law enforcement officers and, through his or her life threatening actions, precipitates or causes the police to retaliate in self-defense or defense of others by killing the person. The term has been academically defined as a situation in which '[i]ndividuals, bent on self destruction, engage in life threatening and criminal behavior in order to force police to kill them' " (Flynn & Homant, *'Suicide by Police' in Section 1983 Suits: Relevance of Police Tactics* (2000) 77 U.Det.Mercy L.Rev. 555, fn. omitted.)

City petitioned for a peremptory writ of mandate, which we now issue. ■ As we shall explain, insofar as the complaint seeks to relitigate negligence, it is barred by the federal judgment and its antecedent adverse factual findings. Insofar as the complaint purports to state a cause of action for violation of state constitutional rights, it is similarly barred by the federal judgment, its antecedent adverse factual findings, and the recent California Supreme Court opinion in *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300 [127 Cal.Rptr.2d 482, 58 P.3d 339].

### Facts

Starting at approximately 11 p.m. on January 7, 1999, decedent led the San Bernardino County Sheriff and California Highway Patrol on an extended multi-county freeway chase. He exited the freeway and drove towards Simi Valley, firing several shots at pursuing police vehicles. He drove his car into the gate of the Ronald Reagan Presidential Library and pointed a handgun at his head and at the police. Decedent continued his flight even after the police flattened the tires of his car.

At 2:00 a.m., decedent stopped in a residential neighborhood and held the handgun to his head. Sergeant Karl Becker ordered him to put the weapon down and exit the car. Decedent refused, threatening to shoot himself. He yelled at the officers to shoot him.

Officers cordoned off the area and repeatedly asked decedent to put down the weapon and exit the car. He told the officers to kill him and pointed the handgun at his temple, chin, forehead, and mouth. A crisis negotiating team, consisting of two negotiators, an intelligence officer, a chronographer, and a psychologist, were summoned to the scene. They repeatedly attempted to convince decedent to surrender. They were unsuccessful.

Decedent's father, stepmother, daughter, and brother arrived at the police barricade and said that decedent was depressed and suicidal. They asked to talk to him but the police officers reasonably believed that this would provoke him.[2] Decedent held a cocked .45-caliber handgun to his head, pointed it at

---

[2] The United States District Court's summary judgment order states that Officer Craig Dungan "attempted to talk with Bayer about his family, but Bayer 'shut him off and t[old] him "not to go there." ' When Dungan learned that Bayer's father had arrived at the scene, he explored whether Bayer wished to talk with him; Bayer told Dungan 'not to go there and that he did not want to talk to his father.' Dungan was concerned that Bayer would stop talking with him if he 'pushed [the issue] any further so he changed the subject.' Similarly, when Dungan learned that Bayer's daughter, Amber, was present, he asked Bayer about her. Bayer said he did not want to talk about his daughter. While Bayer continued to talk with him, Dungan felt that Bayer was non-responsive, either not answering, or telling Dungan he did not want to talk about his family. Dungan tried several times to talk with Bayer about his daughter

officers, and used a hand-held mirror to look outside the car. As daylight approached, the officers were concerned that decedent would have a greater ability to harm local residents and police officers. Several rounds of tear gas were fired to extract him from the car. Decedent became agitated and exited the car with the handgun. When he raised the handgun, the officers reasonably believed he was pointing the weapon at them. They then shot and killed decedent.

### The Federal Action

Plaintiffs filed a federal civil rights action (42 U.S.C. § 1983) in the United States District Court for excessive force, loss of familial association, conspiracy, and violation of decedent's and plaintiffs' Fourth Amendment rights. (*Bayer v. City of Simi Valley* (U.S. Dist. Ct., C.D.Cal. No. 99-10287-MMM) [order].) The complaint also alleged state causes of action for wrongful death and violation of the California Constitution.

Summary judgment was granted on the federal civil rights action based on depositions and stipulated facts that City acted reasonably. The district court found that "there is no doubt that defendants had probable cause to arrest Bayer for a felony, and that Bayer was resisting arrest at the time the decision to use tear gas was made. Bayer also posed a threat to officers and others in the immediate vicinity because he possessed a loaded firearm." (*Bayer v. City of Simi Valley, supra*, Civ. No. 99-10287-MMM.)

With respect to the Fourth Amendment claim, the district court factually found that the police officers' "conduct was objectively reasonable" and that the officers did not use excessive force in firing tear gas to extract decedent from the car. The district court also said: "This conclusion precludes any determination that defendants acted with deliberate indifference, causing plaintiffs' substantive due process claims for loss of familial association to fail as a result. Similarly, because there was no constitutional violation, plaintiffs cannot prove a crucial element of their conspiracy and *Monell* [*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018]] claims." (*Bayer v. City of Simi Valley, supra*, Civ. No. 99-10287-MMM.)

The Ninth Circuit Court of Appeals affirmed the summary judgments stating: "Bayer led the police on a three-hour chase, disobeyed police orders to desist, and shot at police officers. Bayer posed a serious threat to others at the time tear gas was used; he was unstable, armed, and had threatened to fire on police again." The court held that "the use of tear gas was objectively

---

and grandchildren, but Bayer would not talk about them." (Fns. omitted.)

reasonable under the circumstances. It is reasonable for police, following four hours of armed standoff and failed negotiations, to use non-lethal force to extricate a subject who has shot at police and refuses to surrender." (*Bayer v. City of Simi Valley* (9th Cir., July 25, 2002, No. 01-55736) 2002 U.S.App. LEXIS 15796, p. \*\*3.)

## The State Action

Plaintiffs refiled the complaint in the Ventura County Superior Court. Like the federal complaint, plaintiffs have not sued the officers who fired the fatal shots and do not allege that the officers acted unreasonably in shooting decedent. Instead, plaintiffs claim that the police officers negligently used tear gas to extract decedent from the car and that they violated plaintiffs' right of familial association by not permitting them to speak to decedent. Count one of the complaint alleges that City interfered with plaintiffs' "rights to privacy, due process, and to be protected against unreasonable search and seizure as protected under Article I, §§ 1, 7, and 13 of the California Constitution." Count two, for wrongful death, alleges that City was "negligent, ... violated Article I, §§ 1, 7, and 13 of the California Constitution, and ... violated ... California Civil Code § 52.1(b).)"[3]

## Res Judicata

■ The doctrine of res judicata provides that a final judgment on the merits bars a party or privy from relitigating the same cause of action. (*Bay Cities Paving & Grading Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) Under state law, a cause of action is defined as the violation of a primary right. (*Ibid.*) " 'It is established that the doctrine of res judicata precludes parties or their privities from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. [Citations.] ... California follows the primary right theory of Pomeroy; i.e., a cause of action consists of 1) a primary right possessed by the plaintiff, 2) a corresponding primary duty devolving upon the defendant, and 3) a delict or wrong done by the defendant which consists in a breach of such primary right and duty. [Citation.] Thus, two actions constitute a single cause of action if they both affect the same primary right. Where, as here, an action is filed in a California state court and the defendant claims the suit is barred by a final federal judgment, California will determine the res judicata effect of the prior federal court judgment on the basis of

---

[3] Article I, section 1 of the California Constitution protects a right of "privacy." Article I, section 7, provides that "[a] person may not be deprived of life, liberty, or property without due process." Article I, section 13 protects "against unreasonable searches and seizures .... " Civil Code section 52.1 subdivision (b) provides for recovery of damages for violation of an individual's federal or state constitutional rights.

whether the federal and state actions involve the same primary right. [Citation.]' (*Gamble v. General Foods Corp.* (1991) 229 Cal.App.3d 893, 898 [280 Cal.Rptr. 457].)" (*Acuña v. Regents of University of California* (1997) 56 Cal. App.4th 639, 648 [65 Cal.Rptr.2d 388].)

" 'The primary right theory ... is invoked ... when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citations]; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904 [123 Cal.Rptr.2d 432, 51 P.3d 297].) ■ Res judicata precludes piecemeal litigation caused by splitting a single cause of action or relitigating the same cause of action on a different legal theory. (*Id.,* at p. 897.)

Plaintiffs argue that the decision to "split" the causes of action was made by the federal court. In *Acuña v. Regents of University of California, supra,* 56 Cal.App.4th 639, we rejected a similar argument and held that a state cause of action for employment discrimination was barred by a federal summary judgment on a related title VII (42 U.S.C. § 2000e et seq.) and ADEA claim (Age Discrimination in Employment Act; 29 U.S.C. § 623(a)(1)). There, the plaintiff was denied a tenured faculty position and sued the Regents of the University of California for race, ethnicity, and age discrimination under title VII and the ADEA. After the federal court granted summary judgment for the Regents, the plaintiff filed an action in state court under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) for race, ethnicity, and age discrimination. The plaintiff argued that the federal judgment was not a res judicata bar because the federal court declined to exercise pendent jurisdiction over the state claims. We held: "The fact that the FEHA provides different remedies than its federal counterpart (title VII and the ADEA) does not change the nature of the primary right being sued upon." (*Acuña v. Regents of University of California,* 56 Cal.App.4th at p. 650.) Having adjudicated the title VII and ADEA claims in federal court, Acuña could not relitigate the race, ethnicity and age discrimination claims in state court. (*Id.,* at p. 651.)

The same principle applies here. In the federal action, summary judgment was granted on the adverse factual finding that the officers' conduct and use of tear gas was "objectively reasonable." Plaintiffs have recast the action based on theories of negligence. However, these theories are not viable in state court because the federal action has established that the officers' actions were objectively reasonable.

In *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243 [80 Cal.Rptr.2d 196], the decedent threatened suicide with a firearm and was shot by the police. The family sued for wrongful death and was awarded $4 million damages. The Court of Appeal reversed, holding that the officers owed no legal duty or care *to the decedent or his family*. (*Id.*, at pp. 248, 288, fn. 40.) The court said that "imposing liability for the negligent handling of a threatened suicide improperly elevates the interests in preserving the life of the person threatening suicide over the interests of public safety and the physical safety of police officers." (*Id.*, at p. 272.) As a matter of public policy, "the interests to the public in protecting against future harm and the detrimental consequences to the public in imposing a tort duty under such circumstances, outweigh the partial loss of legal accountability occasioned by a rule of nonliability. Moreover, our decision does not insulate police misconduct from all legal and internal scrutiny. Plaintiffs may still pursue a legal action when police misconduct constitutes an intentional tort or a violation of an individual's constitutional or other federally protected rights. (42 U.S.C. § 1983)." (*Id.*, at p. 274.)

Plaintiffs' reliance on *Harris v. Grimes* (2002) 104 Cal.App.4th 180 [127 Cal.Rptr.2d 791] and *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277 [54 Cal.Rptr.2d 655] is misplaced. ■ Those cases state the general rule that a federal court's refusal to exercise pendent jurisdiction over a state claim does not bar the filing of an action in state court. But where, as here, the federal court factually finds that the police officers' conduct was objectively reasonable and grants summary judgment, *Acuña v. Regents of University of California, supra*, 56 Cal.App.4th 639, bars a state negligence action premised upon violation of the same primary right.

### State Constitution Claims

On the state Constitution claims, the complaint alleges that City violated article I, sections 1, 7, and 13 of the California Constitution. ■ In *Katzberg v. Regents of University of California, supra*, 29 Cal.4th 303, our Supreme Court held that a plaintiff may not sue for damages based on a violation of article I section 7 of the California Constitution. There is no "constitutional tort cause of action for damages to remedy an asserted violation of the due process 'liberty' interest under article 1, section 7(a)." (*Katzberg*, at p. 326; see also *Javor v. Taggart* (2002) 98 Cal.App.4th 795, 807 [120 Cal.Rptr.2d 174] [no damages for violation of due process or equal protection clause of the state Constitution].)

The other constitutional claims are also without merit. Although article I, section 1 of the California Constitution creates a right of privacy (see *White v. Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222]), our

Supreme Court has not yet considered whether violation of the privacy clause permits an action for damages. (See *Katzberg v. Regents of University of California, supra,* 29 Cal.4th at p. 313, fn. 13.) Assuming, arguendo, that damages may be permitted in an appropriate case, no cause of action is here stated. Decedent led the police on a three-hour chase and fired several shots at them. The chase culminated in an armed standoff in a public place. Plaintiffs drove to the police barricade and asked to speak to decedent, but he refused to talk to them. (*Ante*, fn. 2.) The federal court factually determined that the officers' "conduct was objectively reasonable ...." This includes the decision to deny access to decedent. A contrary determination would put family members in control of a life-threatening situation which would interfere with the duties of the police and their crisis negotiating team.[4] There was no invasion of plaintiff's right of privacy (Cal. Const., art. I, § 1) and no unlawful search or seizure of decedent's or plaintiffs' person (Cal. Const., art. I, § 13).

### Civil Code section 52.1

The wrongful death cause of action alleges that City violated Civil Code section 52.1, subdivision (b) by refusing to allow plaintiffs to speak with decedent. This statute permits an individual to sue for damages where his or her constitutional rights are violated. Civil Code section 52.1, however, "is simply not a wrongful death provision." (*Bay Area Rapid Transit Dist. v. Superior Court* (1995) 38 Cal.App.4th 141, 144 [44 Cal.Rptr.2d 887].) Because the federal constitutional claims are subject to a res judicata bar and there is "no conduct specified which constitutes a state constitutional violation, there is no conduct upon which to base a claim for liability under 52.1." (*Reynolds v. County of San Diego* (9th Cir. 1996) 84 F.3d 1162, 1170–1171.)

In *Katzberg v. Regents of University of California, supra,* 29 Cal.4th at pages 303–304, footnote 1, our Supreme Court held that an action for damages is permitted where the state Constitution violation is "tied" to a common law or statutory action such as "false arrest, false imprisonment, wrongful termination based upon violation of public policy, or the like. In such actions, a breach of duty or violation of public policy may be established by demonstrating a violation of a constitutional provision, and damages properly may be awarded to remedy the tort." (*Ibid.*)

Plaintiffs have alleged no facts tying a state constitutional right to a common law action or a statutory cause of action. The federal court found

---

[4] It takes little imagination to hypothesize that if the officers had allowed plaintiffs to talk with decedent and he had shot plaintiffs, the officers would be faulted for "negligently" allowing them to do so.

that City's refusal to permit plaintiffs to talk to decedent was objectively reasonable. Plaintiffs are estopped by this adverse factual finding.

## Conclusion

It is unfortunate for everyone that decedent committed "suicide by cop." We empathize with his family. At the same time, we are grateful that police officers, decedent's family, and third persons who lived nearby were not wounded or killed in what could have easily erupted into a protracted gun battle.

A reasonable person, other police officers, attorneys, and even judges and justices may disagree on the tactics used to defuse this life-threatening situation. But once it has been factually determined that the officers' actions were "objectively reasonable" by the United States District Court and such determination has been affirmed by the Ninth Circuit Court of Appeals, the time for second-guessing, i.e., "Monday-morning quarterbacking" (see *Adams v. City of Fremont, supra,* 68 Cal.App.4th at p. 269) must cease.

Let a peremptory writ of mandate issue directing the trial court to vacate its order overruling the demurrer and to enter a new order sustaining City's demurrer without leave to amend. The alternative writ of mandate, issued June 5, 2003, is discharged. City is awarded costs.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied September 29, 2003, and the petition of real parties in interest for review by the Supreme Court was denied November 25, 2003. Brown, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.