(192 P.3d 679)
No. 98,837

DANIELLE RHOTEN, AS AN INDIVIDUAL AND AS HEIR-AT-LAW OF XAVIER RHOTEN (DECEASED), *Appellant*, v. BRUCE DICKSON, IV, *Defendant*, and FRANK PASE, AS AN INDIVIDUAL AND AN EMPLOYEE OF TOPEKA, KANSAS, and THE CITY OF TOPEKA, KANSAS, AS THE PRINCIPAL AND EMPLOYER OF FRANK PASE, *Appellees.*

Opinion filed September 26, 2008.

*Keith Renner*, of Renner Law Office, P.A., of Topeka, for appellant.

*David R. Cooper*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, and *Deanne Watts Hay*, of Parker & Hay, LLP, of Topeka, for appellees.

Before HILL, P.J., PIERRON and GREEN, JJ.

HILL, J.: When discovery revealed the man who struck Danielle Rhoten's car was not aware a Topeka police officer was chasing him, the federal court dismissed Danielle Rhoten's civil rights complaint against the City of Topeka and one of its police officers. The federal judge found no causal connection between the police officer's acts and Rhoten's injury. After that ruling, the federal court declined to hear Rhoten's state negligence claims, and she filed a lawsuit against the City and the officer in Shawnee District Court. Now, we must decide whether the legal doctrines of res judicata, sometimes called claim preclusion, and collateral estoppel, also known as issue preclusion, prevent Rhoten from continuing with her state lawsuit. Because our Supreme Court has ruled that claim preclusion forbids a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit, we hold Rhoten cannot advance her claims. We affirm the Shawnee District Court's grant of summary judgment dismissing her state negligence claims.

*The federal court decided the facts of the car accident.*

On February 5, 2004, Bruce Dickson, IV, was driving southbound on Topeka Boulevard in his four-wheel-drive pickup. Dickson was driving too fast for the snowy road conditions and collided with Marco Conley's van. Danielle Rhoten, expecting her child within 2 weeks, was riding in Conley's van. The collision caused serious injuries to Rhoten and the loss of her unborn child.

Before the collision, Lieutenant Frank Pase, a police officer for Topeka, had been following Dickson from a distance because of Dickson's driving fast in the snow, weaving in and out of lanes, and following too close to cars. While following Dickson, Pase did not activate his emergency lights or siren in his unmarked police car.

*Rhoten seeks redress in federal district court.*

On November 30, 2004, Rhoten filed a civil complaint against Lt. Pase, Topeka, and Dickson, asserting both federal and state law claims in the federal district court of Kansas. In her complaint, Rhoten asserted three claims. First, she made substantive due pro-

cess claims under 42 U.S.C. § 1983 (2000) against Pase and Topeka. Next, Rhoten made negligence, or in the alternative, negligence per se claims under the Kansas Tort Claims Act against Pase and Topeka (through the doctrine of respondeat superior). Finally, she raised a negligence, or in the alternative, negligence per se claim against Dickson.

The parties filed several competing motions seeking judgment or dismissal of the claims. They were all disposed of in a summary judgment order issued in August 2006. The federal district court made findings the state district judge later incorporated in his ruling on summary judgment motions in this case.

"On the evening of February 5, 2004, a little before 7:00 p.m., defendant Bruce Dickson, IV, was driving a Ford F-150 pickup truck with its four-wheel drive engaged. Dickson was in north Topeka, southbound on Topeka Boulevard. Several inches of snow had fallen, producing an accumulation of up to ten inches in places. Some roads had been plowed and some places were wet, slushy or slick. Dickson felt comfortable driving the speed limit in the existing road conditions.

"Defendant Pase, a Lieutenant with the Topeka Police Department, was on duty that evening, driving an unmarked dark blue patrol car. He too was southbound on Topeka Boulevard when he noticed defendant Dickson's pickup approximately one block away. His attention was drawn to the pickup by its quick lane changes and its speed, as he saw it weave in and out of traffic, passing two or three of the seven or eight vehicles in both lanes at the north end of the bridge. Pase also noticed a dark colored car closely following the pickup as it wove in and out of traffic. Pase accelerated from approximately 35 m.p.h. to approximately 55 m.p.h., intending to stop the pickup and get a better description and possibly a tag number from the pickup and the car, both of which preceded him southbound on the Topeka Boulevard bridge.

"Pase did not activate his lights or siren or contact his dispatcher at any time during his pursuit of the vehicles. Pase's unmarked police car was equipped with a rear-facing red and blue flashing light mounted on the inside of the car in the rear window, a red and blue flashing strobe on the passenger sun visor, 'wig-wag' headlights, a siren, all season tires, and a chrome spotlight mounted on the front driver's side windshield pillar. Pase intended to activate his lights and siren when he got closer to the pickup.

"The bridge inclines as one proceeds southbound and rises to a crest, after which there is a flat expanse of bridge across the river. Pase accelerated to 65 m.p.h. in a 35 m.p.h. zone as he approached the crest on the north end of the bridge and reached its flat expanse, but could not see Dickson's pickup. Pase saw the dark-colored car which had been following the pickup reduce its speed, discontinue passing, and move into the right lane. Pase passed it as well as other

vehicles in his attempt to follow Dickson's pickup, which was by then out of sight over the southern crest of the bridge.

"As Pase passed the southern crest of the bridge, he could see some traffic in both lanes at the south end of the bridge. As Pase approached the south end of the bridge, he spotted Dickson's pickup off the bridge near Third Street and Topeka Boulevard, approximately two blocks from him. Pase believed Dickson's pickup had been slowed by traffic at the south end of the bridge. He saw Dickson's pickup accelerate and drive through green lights at Third, Fourth, and Fifth Streets. Dickson's pickup then collided with a northbound van which was attempting to turn west at Sixth Street and Topeka Blvd. Pase was approximately two blocks north at the time of the collision, still attempting to follow Dickson.

"Plaintiff was a passenger in the van which collided with Dickson's pickup. The van's driver, Marco Conley, never saw Pase's vehicle prior to the accident. Pase immediately drove to the scene of the accident and activated his emergency lights. Pase told Dickson he had clocked his speed and that he was 'following and/or chasing' him. Pase commented to a passenger in the same vehicle as plaintiff that he had 'been trying to catch this guy since North Topeka.'

"Plaintiff sustained serious injuries from the accident, including the loss of her unborn son, whose birth was expected in two weeks. . . .

"Factual disputes exist regarding whether the light facing Dickson at Sixth Street was green or red, regarding the speed at which parties were traveling at various times including immediately prior to impact, and other matters not at issue in these motions."

Looking first at Rhoten's claim under § 1983, the federal district court noted the municipality may not be liable where there is no underlying constitutional violation by its officer. But before examining any defenses against § 1983 substantive due process claims, the federal district court stated its primary task was to decide whether Rhoten had asserted a violation of a constitutional right at all. Specifically the judge stated that *a plaintiff must raise a genuine issue of material fact about the causal connection between a defendant's actions or inaction and the plaintiff's injury* to prove that defendant's conduct deprived plaintiff of a federally protectible interest. As recognized by the federal district court, § 1983 contains a causation requirement, which is satisfied if the defendant's conduct was " 'a substantial factor in bringing [the injury] about.' "

Unfortunately for Rhoten, Dickson's deposition revealed that Lt. Pase's actions had no influence on Dickson's driving behavior before the accident:

"Q. Okay. All right. Mr. Dickson, if -if I understand your testimony—and just kind of capsulize what I believe you -you've said is from the—your vehicle being in North Topeka and before you even got on the bridge all the way up until the accident site there was no vehicle behind you, whether it be a police car or a civilian car that influenced the way you drove, would that be correct?
"(Objection as to form by counsel.)
"A. That's correct.
"Q. Okay. In other words, there wasn't anybody that was behind you that was doing something that caused you to change your manner of driving in the least bit, is that true?
"A. No.
"Q. Is that correct?
"A. That's correct."

Next, using a danger creation theory, the federal district court determined whether Lt. Pase's failure to use his emergency lights or siren created a causal connection with Rhoten's injuries. Under this theory, the federal district court declined to find Pase liable for Dickson's actions.

"Under the facts of this case, although defendant Pase may have been aware of the dangers faced by the public by virtue of defendant Dickson's driving, he neither played any part in the creation of that danger nor did anything to render plaintiff or anyone else any more vulnerable to them than they otherwise would have been. Because defendant Dickson's speed and other manner of driving was totally unaffected by Pase's acts and inactions, any danger posed to plaintiff by virtue of Dickson's driving already existed. Because Pace [*sic*] did not alter the status quo by following Dickson at a high rate of speed without lights or siren, and placed plaintiff in no worse position than that in which plaintiff would have been had Pase never followed Dickson at all, no § 1983 liability exists."

Based on both of these findings, the federal district court decided there was a "lack of material question of fact on the causal connection between defendant Pase's actions or inactions and plaintiff's injuries." Therefore, the federal district court granted summary judgment in favor of Pase on Rhoten's § 1983 claim. Also, because Pase had not caused Rhoten's injuries to subject himself to personal liability, the federal district court held Topeka was also not liable under § 1983 and granted summary judgment in favor of Topeka.

Because of its decision on Rhoten's federal claim, the federal district court declined to exercise supplemental jurisdiction over

Rhoten's state claims against Pase and Topeka and dismissed them without prejudice.

"Defendants contend that a finding of lack of causation in plaintiff's substantive due process claims is dispositive of the element of causation in plaintiff's state law negligence claims against defendants Pase and Topeka. The court notes only that this may or may not be so, as causation in the context of a negligence claim may differ somewhat from causation in the context of a substantive due process claim. The court declines to exercise supplemental jurisdiction over plaintiff's claims of negligence and negligence per se against Pase and the City."

The federal district court also granted Dickson's motion to dismiss.

Rhoten appealed this matter to the 10th Circuit Court of Appeals. On October 23, 2007, that court affirmed the federal district court's grant of summary judgment in favor of Topeka and Pase on her claim under § 1983. See *Rhoten v. Pase*, 2007 WL 3088226 (10th Cir. 2007) (unpublished order and judgment). Applying a de novo standard of review, the 10th Circuit agreed with the district court that Rhoten failed to raise a genuine issue of material fact that Pase caused the accident, created a danger that resulted in her injuries, or acted in a conscience-shocking manner.

*We turn now to state court.*

On September 28, 2006, Rhoten filed her state claims against the defendants in Shawnee District Court. She claimed negligence, or in the alternative, negligence per se under the Kansas Tort Claims Act against Pase and Topeka (through the doctrine of respondeat superior) and negligence, or in the alternative, negligence per se against Dickson. In her petition, Rhoten asserted substantially similar factual allegations that were in her federal civil complaint.

In disposing of the case, the district court applied the rule in *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 396, 949 P.2d 602 (1997), *cert. denied* 525 U.S. 831 (1998). The district court examined whether Rhoten's negligence claim arose out of the same transaction as her civil rights lawsuit in federal court. Adopting the facts from the federal district court's decision, the district court determined that both of Rhoten's claims arose out of the same common nucleus of important facts—the traffic accident and

Pase's conduct in that accident. In addition, the district court noted that proof of cause was essential in both claims. Finally, the district court noted the witnesses and facts needed in the state lawsuit overlapped the same evidence used in the federal action. Therefore, the district court applied res judicata to bar Rhoten's state claims.

Basing its decision on the federal district court's conclusion there was no causal connection between Pase's actions or inactions and plaintiff's injuries, the district court also found that collateral estoppel applied. The district court held: "If Plaintiff was allowed to proceed on her negligence claims, a relitigation of that issue would be inevitable because causation is an element of negligence. The relitigating of causation, which Plaintiff has already failed to prove, is strictly prohibited by issue preclusion."

Rhoten appeals, arguing the district court erred because Lt. Pase and Topeka failed to comply with Rule 141 (2007 Kan. Ct. R. Annot. 218) that regulates summary judgment motions and erred when it followed the ruling in *Stanfield.* We look first at the Rule 141 arguments and then the preclusion doctrines.

*We find substantial compliance with Rule 141.*

Rhoten first argues that Pase and Topeka failed to comply with Supreme Court Rule 141(a) when they filed their motions because their motions did not set forth the facts in separately numbered paragraphs. Rhoten claims this was prejudicial.

But our courts have found a technical violation of Rule 141 does not automatically result in judgment for the opposing party. See *City of Arkansas City v. Bruton,* 284 Kan. 815, 836-37, 166 P.3d 992 (2007); *Kelley v. Barnett,* 23 Kan. App. 2d 564, 566, 932 P.2d 471, *rev. denied* 262 Kan. 961 (1997) (viewing disputes over this technical compliance as superfluous when the major dispute between the parties is a legal one rather than a factual one). As noted in *Calver v. Hinson,* 267 Kan. 369, 377-78, 982 P.2d 970 (1999), substantial compliance with Rule 141 can be enough.

Here, clearly Pase and Topeka's motions substantially complied with Rule 141. In their motions, both Pase and Topeka identified the federal district court's decision as the basis for supporting ap-

plying res judicata and collateral estoppel. In fact, Topeka attached a certified copy of the federal district court's decision as well as Rhoten's federal civil complaint to their motions. Also, after filing these motions, the district court made all parties file proposed findings of fact and conclusions of law over this issue. And in those documents, both Pase and Topeka set forth their findings of fact in separately numbered paragraphs, which detailed the federal district court's decision and stated the relevant facts of the collision. They filed these before oral arguments.

As recognized in *McCullough v. Bethany Med. Center*, 235 Kan. 732, 736, 683 P.2d 1258 (1984) (superseded by statute on other grounds), the purpose of Rule 141 is to identify "what facts are or are not controverted" or "on what evidence the parties rely." By identifying Rhoten's federal civil lawsuit and the federal district court's decision in their motions and further providing facts in separately numbered paragraphs in later documents which were filed before oral arguments, Pase and Topeka substantially complied with Rule 141. For these reasons we hold that any Rule 141 violations here did not prevent the district court from granting summary judgment. We turn now to the preclusion doctrines.

*We look first at claim preclusion.*

Our Supreme Court has recognized that our courts are bound to apply federal rules in deciding the preclusive effect of federal court decisions on law. *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 396, 949 P.2d 602 (1997), *cert. denied* 525 U.S. 831 (1998).

In federal court, the doctrine of claim preclusion prevents a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment. According to the 10th Circuit, claim preclusion applies when three elements exist. Those three elements are:

"(1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits. [Citation omitted.] If these requirements are met, res judicata is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit. [Citation omitted.]" *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005), *cert. denied* 547 U.S. 1040 (2006).

Because the 10th Circuit affirmed the federal district court's rulings, we discount Rhoten's claim the federal district court's decision here is not a final judgment.

Rhoten challenges the holding in *Stanfield*, which the district court found controlling. Specifically, Rhoten challenges *Stanfield's* reliance on *Mattson v. City of Costa Mesa*, 106 Cal. App. 3d 441, 164 Cal. Rptr. 913 (1980). See 263 Kan. at 403. For support, Rhoten cites *Harris v. Grimes*, 104 Cal. App. 4th 180, 188-89, 127 Cal. Rptr. 2d 791(2002), where the California Court of Appeals declined to follow *Mattson*. Rhoten questions the current weight of *Stanfield* and requests this court to overturn that decision.

Obviously, Rhoten fails to recognize that this court is duty bound to follow Kansas Supreme Court precedent, unless there is some suggestion the court is leaving its previous position. See *Noone v. Chalet of Wichita*, 32 Kan. App. 2d 1230, 1236, 96 P.3d 674, *rev. denied* 278 Kan. 846 (2004). In fact, in the case *State v. Flores*, 283 Kan. 380, 384, 153 P.3d 506 (2007), the Supreme Court recently cited *Stanfield* for the proposition that res judicata requires a prior final judgment on the merits. That holding is no suggestion of an intent to depart from its prior ruling.

In *Stanfield*, the plaintiff filed an action in the federal district court of Kansas to end the unauthorized use of his name and trademark rights. Under federal question and supplemental jurisdiction, the petition asserted two federal Lanham Act claims and a state law claim for misappropriation of his name and false light. The defendants responded by filing a motion for summary judgment. The federal district court agreed and granted summary judgment in favor of the defendants. For the plaintiff's state common-law claim, the federal district court declined to exercise supplemental jurisdiction. The plaintiff appealed this decision, and the 10th Circuit affirmed the federal district court's grant of summary judgment. The United States Supreme Court denied certiorari.

Meanwhile, the plaintiff filed the state claims in state court. In response, the defendants moved for summary judgment, claiming the doctrine of issue preclusion (collateral estoppel) barred the trial court from addressing plaintiff's claims. The trial court granted defendants' motion for summary judgment but used both the doc-

trines of issue preclusion (collateral estoppel) and claim preclusion (res judicata) to support its decision. The plaintiff timely appealed and the Kansas Supreme Court transferred the case to its court under K.S.A. 20-3018(c).

The Supreme Court addressed only the doctrine of claim preclusion in deciding plaintiff's appeal. In *Stanfield*, the plaintiff argued the claims he raised in the state court action were not the same claims which the federal court had previously resolved. In support of his argument, plaintiff cited several federal cases that recognized the distinction between federal trademark claims and state privacy claims.

In rejecting this argument, our Supreme Court focused on the third element of claim preclusion. The Supreme Court explained the term "claim" is defined in factual terms so the same factual transactions or series of connected transactions are one "claim," regardless of the number of substantive legal theories available to the plaintiff based on those facts. The court cited the Comments to Restatement (Second) of Judgments §§ 24 and 25 (1980). Using this definition, the court ruled "the question under the third factor of claim preclusion is *whether the plaintiff's current lawsuit in state court for misappropriation and false light arises out of the same 'transaction' as his lawsuit in federal court for Lanham Act violations.*" (Emphasis added.) 263 Kan. at 402.

Applying this rule to the facts in the case, the Supreme Court determined that both the plaintiff's state and federal actions arose out of a common nucleus of active fact—the defendants' labeling of certain products with the term "Stanfield" after 1990. The Supreme Court further found the facts necessary to prove all the plaintiff's theories were related in time and in origin. Finally, the Supreme Court ascertained the witnesses and proof needed in the state action overlapped the witnesses and proof which would have been utilized in the federal action had summary judgment not been granted. The court decided this way because each allegation in the state court petition was almost identical with each allegation in the federal court complaint. Thus, the Supreme Court decided the facts in both the federal and state actions made up a single transaction or "claim," and the federal court's determination of the

claim against the plaintiff precluded him from relitigating the same claim in the state court action. 263 Kan. at 402. In summary, the Supreme Court stated:

"A judgment has previously been determined on this 'claim' in federal court against the plaintiff. Having been defeated on the merits in federal court, the plaintiff attempts to bring another action in state court utilizing a different legal theory. Despite the differences in legal theories, this state lawsuit does not raise a new 'claim.' Thus, this second action in state court is based on a 'claim' which has been previously litigated in a competent federal court adverse to the plaintiff. As such, all three factors of claim preclusion are satisfied, and this state court action is barred by that doctrine." 263 Kan. at 402.

Not giving up, the plaintiff in *Stanfield* argued the federal court's discretionary refusal to exercise its supplemental jurisdiction over the remaining state law claims should qualify as an exception to claim preclusion. In reply, the Supreme Court relied on *Mattson*. In *Mattson*, the California Court of Appeals rejected a similar argument made by the plaintiff, reasoning:

" 'A contrary rule would invite manipulation. It would permit a plaintiff halfheartedly to request the federal court to exercise pendent jurisdiction, offer little resistance to any argument by the defendant against its exercise, and hope that the federal court would decline to exercise pendent jurisdiction and therefore reserve the plaintiff a second chance to prevail in a state court action . . . . Judicious utilization of judicial and litigant resources become ever more essential in the wake of the law explosion. The efficient administration of justice would not be advanced by a rule resulting in or encouraging multiple litigation of a single cause of action.' 106 Cal. App. 3d at 455." *Stanfield*, 263 Kan. at 403-04 (quoting *Mattson*).

The court agreed with *Mattson*'s reasoning. It held the federal court's refusal to consider the plaintiff's state law theories did not prevent claim preclusion from applying to theories in a state lawsuit *"since the theories arose out of the same claim or factual transaction which the federal court did determine."* (Emphasis added.) 263 Kan. at 404.

To apply the ruling in *Stanfield* to this case, we must first decide if Rhoten's state lawsuit for negligence arises out of the same transaction as her lawsuit in federal court for § 1983 violation. Obviously, both of Rhoten's claims arose out of the traffic accident between Dickson and Conley and Lt. Pase's conduct in that accident. Further, similar to *Stanfield*, the facts necessary to prove

Rhoten's federal and state law theories relate in time and origin. Also, Rhoten's statement of facts in her federal complaint and state petition discloses the witnesses and proof needed in both actions are identical. Thus, because Rhoten's state claim arose out of the same transaction as her federal lawsuit, we find that res judicata applies. The district court was correct.

*The doctrine of issue preclusion is more problematic.*

A new view is forming in this field about whether an exercise of discretion forces a plaintiff to split his or her cause of action. *Stanfield* relies on *Mattson*, a 1980 decision about res judicata in cases where a federal district court declines to exercise jurisdiction over state claims. In *Harris*, the California Court of Appeals declined to follow *Mattson* for that reason, stating:

"*Lucas* [*v. County of Los Angeles*, 47 Cal. App. 4th 277, 287, 54 Cal. Rptr. 2d 655 (1996),] squarely addresses respondent's contention when, as here, a federal court, instead of a party, splits a cause of action. It explained, California's prohibition on splitting causes of action 'does not aid [a defendant when] it was not [the plaintiff] who made the decision to "split" causes of action between state and federal court. [The plaintiff] tendered the entire case to the federal court, which had pendent jurisdiction to determine the state causes of action but declined to exercise it. [Citations.] A federal court's discretionary refusal to exercise pendent jurisdiction over a state claim does not bar further litigation of the state claim in state court.'

"*Lucas* is consistent with the Restatement Second of Judgments' expression of widely held legal principles, which distinguishes between a party's splitting of its causes of action and a court's doing the same thing. The Restatement observes, 'A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. *If however, the court in the first action . . . declined to exercise [its jurisdiction] as a matter of discretion, then a second action in a competent court presenting the omitted theory or ground should be held not precluded.*' (Rest.2d Judgments, § 25, com. e.)

"We acknowledge a two-decade old decision, *Mattson*, 106 Cal. App. 3d at 441 supports respondent's contention. . . .

"We decline to follow *Mattson*, however, because *Lucas* is a more recent and, as reflected by the Restatement, widely endorsed pronouncement of the law. Moreover, *Mattson*'s holding was partly based upon its concern that a different

rule would invite gamesmanship by plaintiffs. . . . There is no evidence of a similar worry here." 104 Cal. App. 4th at 187-189.

Since *Harris*, however, the California Court of Appeals in *City of Simi Valley v. Superior Court*, 111 Cal. App. 4th 1077, 1084, 4 Cal. Rptr. 3d 468 (2003), distinguished its case from both *Harris* and *Lucas* because its federal court had factually determined the police officers' conduct objectively reasonable when it granted summary judgment and the state negligence action was premised on a violation of the same primary right.

However, clearly in federal court the doctrine of issue preclusion bars the adjudication of a particular claim in a later proceeding when four elements are met. According to the 10th Circuit, those four elements are:

"(1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. [Citation omitted.]" *Smith v. Dinwiddie*, 510 F.3d 1180, 1188 (10th Cir. 2007), *cert. denied* 553 U.S. 1035 (2008).

Fundamentally, to prove a claim of negligence under Kansas law, especially one for wrongful death, the plaintiff must prove a causal connection between the breach of duty and the injury suffered. See *Robbins v. City of Wichita*, 285 Kan. 455, 460, 172 P.3d 1187 (2007). Here, the federal district court determined that no such causal connection existed. In support of its finding that Pase's pursuit of Dickson did not cause the collision between Dickson and Conley, the federal district court relied on Dickson's deposition where he repeatedly testified that Pase's actions had no influence on his driving. The 10th Circuit later affirmed this finding. Therefore, because Rhoten is trying to relitigate this same factual issue in her state claim, which has been decided in her federal claim, we conclude that issue preclusion applies to this issue.

Turning to the failure to use emergency lights and siren we look to K.S.A. 8-1738(d). This statute states a siren shall not be used

*except when such vehicle is operated* in response to an emergency call *or in the immediate pursuit of an actual or suspected violator of the law, in which said*

*latter events the driver of such vehicle shall sound said* siren *when reasonably necessary to warn pedestrians and other drivers of the approach thereof.*" (Emphasis added.)

Here, the federal district court determined that Pase's failure to activate his emergency equipment did not create or increase the danger that existed by Dickson's driving behavior. To support this finding, the federal district court used the danger creation theory, which focuses on the affirmative actions of the state in placing the plaintiff in harm's way. See *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (stating the six elements). The underlying elements of this theory, however, differ from K.S.A. 8-1738(d).

Applying K.S.A. 8-1738(d), clearly no prior determination has been made that Pase's pursuit of Dickson was not "immediate," or that it was not "reasonably necessary" for Pase to sound his siren to warn pedestrians and other drivers. In addition, as noted by the federal district court and adopted by the state district court, factual disputes remain. First, the parties do not agree whether the light facing Dickson at Sixth Street was green or red. Next they disagree about the speed at which parties were traveling at various times. Finally, the parties do not agree about the speed at which the parties were traveling immediately before impact. This means the parties have not litigated the causation issue in light of K.S.A. 8-1738(d). If *Stanfield* is ignored, then this issue may be litigated.

But the language in *Stanfield* is clear, "[t]hus, a legal theory does not even need to be raised in the first action, more or less considered by the court, in order for it to be precluded in a later action under the claim preclusion doctrine, if it arose out of the same claim or factual transaction which the first action determined." *Stanfield*, 263 Kan. at 612-13. Rhoten asks us to overturn *Stanfield* on this point. We are powerless to do that. There is no hint that our Supreme Court wants to depart from the ruling in *Stanfield*.

Affirmed.