**Heriberto RODRIGUEZ, Carolos Flores, Erick Nunez, Juan Carlos Sanchez and Juan Trinidad, Plaintiffs,**

v.

**COUNTY OF LOS ANGELES, et al., Defendants.**

**Case No. 10–6342–CBM (AJWx).**

United States District Court, C.D. California.

Signed May 29, 2014.

994

Caitlin S. Weisberg, David S. McLane, Kevin J. Lahue, Ronald O. Kaye, Kaye McLane Bednarski and Litt LLP, Pasadena, CA, James S. Muller, Law Offices of James S. Muller, Glendale, CA, for Plaintiffs.

David D. Lawrence, Daniel S. Cha, Dennis Michael Gonzales, George E. Morris, Jr., Jin S. Choi, Paul B. Beach, Lawrence Beach Allen and Choi P.C., Glendale, CA, for Defendant.

ORDER DENYING DEFENDANTS' MOTIONS (1) FOR JUDGMENT AS A MATTER OF LAW; (2) MOTION TO VACATE JUDGMENT AS TO MOVING DEFENDANTS AND FOR A NEW TRIAL FOR THESE DEFENDANTS AFTER RESOLUTION OF INTERLOCUTORY QUALIFIED IMMUNITY APPEALS; (3) TO VACATE PUNITIVE DAMAGES; and (4) FOR A NEW TRIAL PURSUANT TO F.R.C.P. 59(A).

CONSUELO B. MARSHALL, District Judge.

Before the Court are four post-trial motions filed by Defendants:

1. Motion for Judgment as a Matter of Law Pursuant to Fed.R.Civ.P. 50(b) ("JMOL"). (Docket No. 637.)

2. Motion to Vacate Judgment and for New Trial ("Motion to Vacate"). (Docket No. 638.)

3. Motion to Vacate Punitive Damages or Remittitur or New Trial on Punitive Damages ("Punitive Damages Motion"). (Docket No. 640.)

4. Motion for New Trial Pursuant to Fed.R.Civ.P. 59(a) ("59(a) Motion"). (Docket No. 639.)

On April 1, 2014, the Court held oral arguments on these motions and orally denied Defendants' Motion to Vacate, 59(a) Motion, and Punitive Damages Motion from the bench with written orders to follow. (Docket No. 672.) Upon consideration of the papers and arguments submitted, the Court also denies Defendants' JMOL. The below order addresses each of Defendants' post-trial motions in turn.

## I. JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343(3), and 1367.

## II. FACTUAL OVERVIEW

Plaintiffs Heriberto Rodriguez, Carlos Flores, Erick Nunez, Juan Carlos Sanchez, and Juan Trinidad (collectively "Plaintiffs") are former or current inmates of the Los Angeles County Men's Central Jail ("MCJ"). Plaintiffs filed this suit against numerous Defendants including the County of Los Angeles (the "County"), Los Angeles Sheriff's Department ("LASD"), and LASD supervisors and deputies on August 25, 2010 (collectively, "Defendants"). (Docket No. 1.) In their complaint, Plaintiffs allege that the deputies of LASD physically beat them with the purpose to harm, thereby violating their right to be free from excessive force under the Eighth and Fourteenth Amendments. (Second Amended Complaint ("SAC") at 1–2.) (Docket No. 76.)

A month-long jury trial commenced on October 1, 2013. (Docket No. 487.) The jury returned a verdict in favor of the Plaintiffs against twenty of the individual defendants on November 7, 2013. (Docket No. 569.) The Court entered judgment in favor of the Plaintiffs on February 6, 2014. (Docket No. 626.)

## III. PROCEDURAL OVERVIEW

Prior to trial, the Defendants filed a Motion for Summary Judgment asserting qualified immunity on behalf of all individual defendants. (Docket No. 214.) The Court denied the motion, finding genuine issues of material fact. (Docket No. 261.) On July 23, 2013, moving Defendants Daniel Cruz, Christopher Blasnek, Matthew Onhemus, Michel McGrattan, and Kelley Washington (for purposes of this Order, the "Appellant Defendants") filed a Notice of Interlocutory Appeal of Denial of Qualified Immunity. (Docket No. 290.) The Ninth Circuit ordered the Defendants either to dismiss their interlocutory appeal or to show cause as to why the interlocutory appeal should not be dismissed for lack of jurisdiction. *Id.* at 2. ("A review of the record suggests that this court may lack jurisdiction over this appeal because an order denying qualified immunity on the ground that a genuine issue of material fact exists is not a final, immediately appealable order ... Within 21 days after the date of this order, appellants shall move for voluntary dismissal of this appeal or show cause why it should not be dismissed for lack of jurisdiction.") (*Rodriguez v. County of Los Angeles*, Ninth Circuit Case No. 13–56292, Docket No. 3). On the same day, Plaintiffs filed a motion and asked this Court to certify Appellant Defendants' appeal as frivolous under *Chuman v. Wright.* (Docket No. 293.) The Court denied Plaintiffs' *Chuman* motion. (Docket No. 356.)

Defendants then filed an "emergency motion" under Circuit Rule 27–3 for an immediate stay of proceedings, including a stay of the trial. (*Rodriguez*, Ninth Circuit Case No. 13–56292, Docket No. 7.)

This motion was denied by the Circuit. (*See Rodriguez,* Ninth Circuit Case No. 13–56292, Docket No. 8.) Less than a month later, with the Appellant Defendants' appeal pending, this Court proceeded to trial for all Defendants on Plaintiffs' state and federal claims.[1] (Docket No. 487) At the conclusion of trial, the Court submitted the case to the jury pending the Ninth Circuit's resolution of the appeal. (Docket No. 566.) On November 7, 2013, the jury reached a verdict. (Docket No. 569.)

A few weeks later, on December 5, 2013, the Ninth Circuit discharged its order to show cause of the Appellant Defendants' appeal of summary judgment and issued an order advising the parties that the jurisdictional issue did "not appear suitable for summary disposition" and providing a briefing schedule set for January and February 2014. (*Rodriguez,* Ninth Circuit Case No. 13–56292, Docket No. 9.)

On February 6, 2014, this Court entered Judgment based on the jury's verdict. Defendants filed the current four post-trial motions on March 17, 2014. (Docket Nos. 637–630.), and the Circuit vacated the earlier scheduling order for the Appellant Defendants' appeal pending the resolution of these motions. (*Rodriguez,* Ninth Circuit Case No. 13–56292, Docket No. 14.) Defendants' post-trial motions are addressed in turn below.

## IV. MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. STANDARD OF LAW

■ When a motion for judgment as a matter of law is made after a verdict was returned, "the [C]ourt may ... (A) allow the judgment to stand; (B) order a new trial, or (C) direct entry of judgment as a matter of law." Fed.R.Civ.P. 50(b)(1). "Judgment as a matter of law is appropri-

ate when the evidence presented at trial permits only one reasonable conclusion." *Mangum v. Action Collection Serv., Inc.,* 575 F.3d 935, 938 (9th Cir.2009) (quoting *Torres v. City of Los Angeles,* 548 F.3d 1197, 1205 (9th Cir.2008)). Thus, "[a] motion for judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor." *Torres,* 548 F.3d at 1205 (quoting *El–Hakem v. BJY Inc.,* 415 F.3d 1068, 1072 (9th Cir.2005)). The jury's verdict, however, must be upheld if it is supported by substantial evidence, which "is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified School Dist.,* 251 F.3d 1222, 1227 (9th Cir. 2001). A court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Torres,* 548 F.3d at 1205–06. A court may not separately make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105, 121 (2000).

■ The law of the case doctrine generally precludes a court from "reconsidering an issue that already has been decided by the same court, or a higher court in the identical case." *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997). Courts, exercising their discretion, may depart from the law of the case where: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Id.*

### B. ANALYSIS

Defendants raise six arguments for judgment as a matter of law:

---

[1] Only Plaintiffs' federal claims were the sub-

ject of the summary judgment appeal.

1. Plaintiffs failed to prove California Civil Code § 52.1 claims because Plaintiffs did not prove that they were subject to "threats, intimidation, and coercion" separate from their Eighth Amendment Claims.

2. Supervisory Defendants cannot be liable for their subordinates' alleged use of excessive force under § 52.1 pursuant to Gov.Code § 820.8

3. Supervisory Defendants are immune for discretionary acts under § 820.8

4. Defendants who only used directed force cannot be held liable under § 1983 or § 52.1

5. Individual Defendants who did not prevail at trial are entitled to qualified immunity.

6. The evidence did not establish that the excessive force was caused by any policy or custom to establish *Monell* liability against Defendant County of Los Angeles.

Most of Defendant's arguments were argued and decided by this Court earlier in this litigation. The Court finds none of Defendants' arguments sufficient to warrant judgment as a matter of law.

### 1. Plaintiffs did not fail to prove their § 52.1 claims.

■ Section 52.1 provides a right to relief when someone "interferes by threats, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Gov't Code § 52.1. To prevail on a § 52.1 claim, a plaintiff must therefore prove (1) a violation of a constitutional or statutory right (2) by intimidation, threats or coercion. *Venegas v. Cnty. of Los Angeles*, 153 Cal. App.4th 1230, 1242, 63 Cal.Rptr.3d 741, 750 (2007).

Defendants take the position that a California Civil Code § 52.1 claim can only survive if the plaintiff proves "threats, intimidation, or coercion" separate and apart from whatever constitutional violation is at issue in the case. *See Rodriguez v. City of Fresno*, 819 F.Supp.2d 937, 953 (E.D.Cal. 2011) (holding that under § 52.1, "the coercive force applied against a plaintiff must result in an interference with a separate constitutional or statutory right" and "it is not sufficient that the right interfered with is the right to be free of the force or threat of force that was applied"). Defendants argue that Plaintiffs failed to prove liability under California Civil Code § 52.1 because Plaintiffs did not prove that they were subject to "threats, intimidation, and coercion" separate from their Eighth Amendment Claims.

### a) Section 52.1 does not require that Plaintiffs prove "threats, intimidation, or coercion" distinct from their Eighth Amendment claims in this case.

The Ninth Circuit recently held that liability under § 52.1 can be based on the same facts as an underlying constitutional violation. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105–06 (9th Cir.2014). However, prior to this decision, district courts were split on whether or not liability under § 52.1 required a showing of "threats, intimidation, or coercion" separate and distinct from a constitutional violation. Defendants argue, based on the district court split, that some district courts have held that a § 52.1 claim is only proper when a plaintiff shows "threats, intimidation, or coercion" independent from the Constitutional violation (such as excessive force or wrongful detention) itself. *See, e.g., Williams v. County of Riverside*, No. EDCV 13–01954 DDP (DTBx), 2014 WL 1095909 at *2–3 (C.D.Cal. Mar. 19, 2014).

Defendants principally rely on *Shoyoye v. Cnty. of Los Angeles,* 203 Cal.App.4th 947, 137 Cal.Rptr.3d 839 (2012). In *Shoyoye,* the plaintiff was wrongfully detained because of a clerical error. *Id.* at 951, 137 Cal.Rptr.3d 839. The evidence at trial showed that "none of the county employees" had wrongfully detained the plaintiff "with actual or presumed knowledge that he should have been released." *Id.* at 961, 137 Cal.Rptr.3d 839. The *Shoyoye* court distinguished cases where an officer's conduct "became intentionally coercive and wrongful, i.e. a knowing and blameworthy interference with the plaintiffs' constitutional rights" and where the "coercion was not carried out in order to effect a knowing interference with [a plaintiff s] constitutional rights." *Id.* at 959–62, 137 Cal. Rptr.3d 839. The court held that where coercion is inherent in the constitutional violation alleged (there, an over-detention), a plaintiff must show intent or knowledge to meet § 52.1's requirement of threats, intimidation, or coercion. *Id.* at 959, 137 Cal.Rptr.3d 839.

This Court, guided by recent Ninth Circuit and district court case law, does not read *Shoyoye* to require a separate showing of coercion in § 52.1 claims. This Court agrees with other courts holding that the relative distinction for purposes of a § 52.1 claim is between intentional and unintentional conduct, and that *Shoyoye* applies only when the constitutional violation is unintentional. *See Bass v. City of Fremont,* 2013 WL 891090, *5–6 (N.D.Cal. Mar. 8, 2013) (finding that *Shoyoye* applies where the constitutional violation was brought about solely "by human error rather than intentional conduct"); *M.H. v. Cnty. of Alameda,* 11–CV–02868 JST, 2013 WL 1701591 *7 (N.D.Cal. Apr. 18, 2013) ("the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and ... *Shoyoye* applies only when the conduct is unintentional"); *Holland v. City of San Francisco,*

No. C10–2603 TEH, 2013 WL 968295 (N.D.Cal. Mar. 12 2013) (distinguishing *Shoyoye* on the basis that here the harms alleged were "brought about by intentional conduct" that "may reasonably [be] perceived as threatening, intimidation, or coercive").

The Court's reading of *Shoyoye* abides by California Supreme Court and Court of Appeals precedent. *See Venegas v. County of Los Angeles,* 32 Cal.4th 820, 827, 843, 11 Cal.Rptr.3d 692, 694, 708, 87 P.3d 1 (2004) (permitting a § 52.1 claim to proceed where the coercive conduct was based on the constitutional violation itself); *Bender v. Cnty. of Los Angeles,* 217 Cal. App.4th 968, 159 Cal.Rptr.3d 204 (2013) (rejecting a broad interpretation of *Shoyoye* that requires a plaintiff show "threats, intimidation, or coercion" independent from a violation of the federal constitution). Furthermore, the extremely broad reading of *Shoyoye* that Defendants advocate for would perversely preclude any § 52.1 claim in which the underlying constitutional violation involved "threats, intimidation, or coercion" and would run contrary to the plain language of the statute. *Bass,* 2013 WL 891090, at *5 (noting that a broad reading of *Shoyoye* "is contrary to the plain language of [§ 52.1], which specifically provides for a civil action based on interference with a right 'by threats, intimidation, or coercion' ").

■ Therefore, this Court finds that § 52.1 does not require a showing of "threats, intimidation, or coercion" separate and distinct from an underlying constitutional violation. *See Chaudhry,* 751 F.3d at 1105.

**b) Plaintiffs met § 52.1's requirement of "threats, intimidation, or coercion" by proving Defendants acted knowingly and intentionally**

■ Plaintiffs' evidence at trial demonstrated that Supervisory Defendants

saw or heard Plaintiffs being beaten and knowingly and intentionally permitted the use of unconstitutional force. The evidence at trial also established that the deputy Defendants engaged in malicious conduct with the intent to harm. Defendants' conduct, therefore, was not determined to be the result of human error as in *Shoyoye*. The jury found that Defendants acted with the intent to cause pain and thereby found Eighth Amendment violations and also sufficient "threats, intimidation, or coercion" to support state law § 52.1 violations. (*See* Docket Nos. 595, 597, 599, 601.) Relief under Civil Code section 52.1 does not require a plaintiff to show the defendant acted with discriminatory animus or intent. *O'Toole v. Superior Court*, 140 Cal.App.4th 488, 502, 44 Cal. Rptr.3d 531 (2006)). In the case in front of this Court, Plaintiffs not only proved up "threats, intimidation, or coercion," but also proved animus and intent. Based on the evidence presented at trial, Plaintiffs did not fail to prove liability under California Civil Code § 52.1. *See Venegas*, 32 Cal.4th at 841–43, 11 Cal.Rptr.3d 692, 87 P.3d 1; *Bender*, 217 Cal.App.4th 968, 159 Cal.Rptr.3d 204.

## 2. Supervisory Defendants are not entitled to immunity for subordinates' use of excessive force under Gov't Code § 820.8.

California Government Code § 820.8 states that "a public employee is not liable for an injury caused by the act or omission of another person." Cal. Gov't Code § 820.8. The statute further states that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." *Id.*

Defendants argue that the Supervisory Defendants (Blasnek, Cruz, McGrattan, Onhemus, and Washington) cannot be liable for their subordinates' alleged use of excessive force under § 52.1 pursuant to

§ 820.8. However, each of the Supervisory Defendants was found liable for her own actions under § 52.1, including witnessing and directing their subordinates to violate Plaintiffs' rights. (*See* Docket Nos. 592–601 (verdict forms).) Therefore immunity under § 820.8 does not apply. *Johnson v. Duffy*, 588 F.2d 740, 744 (9th Cir.1978) ("California law expressly imposes liability on a public employee for his own act or omission"); *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (holding that a superior "can be held liable in his individual capacity if he participated in the deprivation of [a plaintiff's] constitutional rights."); *McKay v. City of Hayward*, 949 F.Supp.2d 971, 988 (N.D.Cal.2013) ("[T]he failure to intervene in another officer's use of excessive force is an independent omission, and not a claim immunized by California Government Code § 820.8.").

The Supervisory Defendants were held liable for their own wrongful acts and omissions and are therefore not entitled to immunity under § 820.8. Therefore, these Defendants are not entitled to judgment as a matter of law.

## 3. Supervisory Defendants' are not entitled to immunity for discretionary acts under Gov.Code § 820.2

California Government Code § 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vest in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. Defendants argue that the Supervisory Defendants are entitled to immunity from civil liability under § 820.2 because their conduct was discretionary in nature.

The Supervisory Defendants were found liable for their direction of the cell extractions, not simply for a discretionary policy decision. Plaintiffs presented evidence at trial that Supervising Defendants not only

decided to conduct the cell extractions but also witnessed and allowed their subordinates to violate Plaintiffs' rights by using excessive force. Plaintiffs' evidence showed that all of the Supervising Defendants either saw or heard Plaintiffs being beaten and that they saw the injuries caused by these beatings. Accordingly, Supervisory Defendants' liable conduct was not discretionary within the meaning of California Government Code § 820.2. *Johnson v. State of California*, 69 Cal.2d 782, 787–93, 73 Cal.Rptr. 240, 244–248, 447 P.2d 352 (1968) (finding that while basic policy decisions are considered an exercise of discretion, implementation of those decisions should be construed as "ministerial" and therefore not within the scope of immunity); *State Dept. of State Hospitals v. Super. Ct.*, 220 Cal.App.4th 1503, 1515, 163 Cal.Rptr.3d 770, 781 (Cal.App.2d Dist. 2013) ("Public entities and employees enjoy statutory immunity for discretionary policy decisions, but do not have immunity for ministerial administrative acts."), *reh'g denied* (Nov. 18, 2013), *review granted and opinion superseded sub nom.*, 167 Cal. Rptr.3d 657, 317 P.3d 1183 (Cal.2014).

Defendants' acts were not discretionary. The Supervisory Defendants are not entitled to immunity under California Government Code § 820.2.

**4. Defendants are not entitled to judgment as a matter of law because they only used "directed force."**

■ Defendants argue that those defendants who only used force as directed by their supervisors—Deputies Sanford, Vazquez, and Delgado—are entitled to judgment as a matter of law because there was a legitimate penological purpose for their actions. Defendants argue that Plaintiffs resisted cell extractions, and this necessitated use of the Tasers by the Defendants.

At trial, the jury found that the deputies engaged in malicious conduct with intent to harm, including using Tasers on sensitive body parts and on unconscious individuals. These findings support Plaintiffs Eighth Amendment claims. *See Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156, 165 (1992) (holding that malicious or sadistic use of force with intent to harm violates the Eighth Amendment); *see also Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1084–1085, 89 L.Ed.2d 251, 261–62 (1986) (finding that, in the context of a prison disturbance, an Eighth Amendment violation turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"). Evidence proved that Defendants acted without a legitimate purpose; therefore, they are not entitled to judgment as a matter of law.

**5. Defendants are not entitled to qualified immunity.**

■ Defendants argue that they are entitled to qualified immunity, and therefore cannot be held liable as a matter of law. However, Defendants may only be entitled to qualified immunity if (1) the defendant did not violate the plaintiff's constitutional rights, or (2) the constitutional right at issue was not "clearly established" at the time of the violation. *Whitley*, at 335, 341, 106 S.Ct. 1078.

■ For a constitutional right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates [a constitutional] right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987); *see also Rosenbaum v. Washoe County*, 663 F.3d 1071, 1075 (9th Cir.2011) ("The linchpin of qualified immunity is the reasonableness of the official's conduct"). The Supreme Court has held that there need not be identical factual

precedent for an act to be "clearly established." *See Torres v. City of Madera,* 648 F.3d 1119, 1128 (9th Cir.2011) ("[the Circuit has] never required a prior case on all fours prohibiting that particular manifestation of unconstitutional conduct to find a right clearly established") (internal quotation omitted). Where defendants lack a "legitimate question" regarding whether or not their actions would violate a constitutional right, qualified immunity must be denied. *Anderson,* 483 U.S. at 658, 107 S.Ct. 3034 (*citing Mitchell v. Forsyth,* 472 U.S. 511, 535, n. 12, 105 S.Ct. 2806, 2820, n. 12, 86 L.Ed.2d 411, 431, n. 12 (1985)).

This Court finds that, as a matter of law, none of the Defendants are entitled to qualified immunity. Plaintiffs proved at trial that Defendants knowingly violated the law. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278 (1986) (holding that "qualified immunity is designed to shield from liability 'all but the plainly incompetent or those who knowingly violate the law.'"). Officers have been on notice since at least 1992 that intentionally harming a prisoner without a permissible purpose violates the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). As in similar cases involving intent and malice "[t]he facts of this case do not fall in the 'hazy border between excessive and acceptable force' as a legal matter." *See Torres v. City of Madera,* 648 F.3d 1119, 1127–28 (9th Cir. 2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1032, 181 L.Ed.2d 739 (2012) (internal citations and quotations omitted). Therefore, the Defendants are not entitled to qualified immunity.

### a) Defendants Cruz and Blasnek are not entitled to qualified immunity as a matter of law.

▮ Defendants argue that it was not "clearly established" that Defendants Cruz and Blasnek should have intervened in the cell extractions, and therefore they are entitled to qualified immunity. (JMOL at 14–15). However, it is established law that officers have a duty to intercede when a fellow officer violates the constitutional rights of a citizen. *Robins v. Meecham,* 60 F.3d 1436, 1442 (9th Cir.1995) (holding that "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene"); *Knapps v. City of Oakland,* 647 F.Supp.2d 1129, 1163 (N.D.Cal.2009) ("A reasonable officer could not have reasonably but mistakenly believed that he had no duty to intervene to stop another officer in their immediate presence from inflicting excessive force on a subject when they could have prevented it."). At trial, Plaintiffs provided evidence showing that Defendants Cruz and Blasnek saw or heard Plaintiffs being beaten and were in a position to intercede and prevent excessive force as it occurred. Furthermore, Plaintiffs provided evidence that Defendants Cruz and Blasnek approved the use of weapons against Plaintiffs. There is no qualified immunity where Defendants' actions would reasonably lead to the malicious and sadistic treatment of inmates. *Graves v. City of Coeur D'Alene,* 339 F.3d 828, 848 (9th Cir.2003) ("A supervisor can be liable under section 1983 if he set[s] in motion a series of acts by others ..., which he knew or reasonably should have known, would cause others to inflict the constitutional injury.") (Internal quotations omitted). Therefore, there was sufficient evidence to show that Cruz and Blasnek had an opportunity to intervene and can be held liable for their failure to intervene.

### b) Sergeants McGrattan, Ohnemus, and Washington are not entitled to qualified immunity as a matter of law.

▮ Defendants argue that Sergeants McGrattan, Ohnemus, and Washington are entitled to qualified immunity for having

directed the use of force during the course of Plaintiffs' cell extractions in response to Plaintiffs' refusal to comply with instructions. Sergeants McGrattan, Ohnemus, and Washington directed the deployment of stinger rounds and stingball grenades, the entry of shield and capture deputies into Plaintiffs' cells, and the use Tasers.

The evidence presented at trial demonstrated that the level of force used surpassed what was necessary to gain control of the situation, and force was used when Plaintiffs were not resisting and after they were incapacitated (i.e. unconscious, limp, or restrained). With respect to these Defendants, the evidence at trial showed that they directed this excessive force and encouraged their subordinates' use of force with the intent to harm.

Accordingly, the Court finds that Sergeants McGrattan, Ohnemus, and Washington are not entitled to qualified immunity as a matter of law. *See Hudson,* 503 U.S. at 6, 112 S.Ct. 995.

**c) The deputies who were directed to deploy a taser are not entitled to qualified immunity as a matter of law.**

■ Defendants argue that the law regarding use of a Taser was not "clearly established" at the time of the constitutional violation, and therefore Defendants who used Tasers are entitled to qualified immunity as a matter of law. (JMOL at 16:8–10).

The evidence presented at trial proved that Defendants Sanford, Vazquez, and Delgado deployed Tasers at sensitive body parts and for unnecessary amounts of time in a fashion intended to cause pain.[2] Defendants cite recent cases granting qualified immunity to officers who used Tasers in which courts held that Taser usage was not "clearly established." However, the

cases cited are distinguishable because, in those cases, the officers were not using Tasers with the purpose of inflicting pain. *E.g. Mattos v. Agarano,* 661 F.3d 433 (9th Cir.2011) (en banc); *Bryan v. MacPherson,* 630 F.3d 805 (9th Cir.2010). The Court finds that the evidence presented at trial was sufficient to prove that Defendants violated clearly established law by maliciously using a Taser as an instrument to inflict harm and corporal punishment. *See Mendoza v. Block,* 27 F.3d 1357, 1362 (9th Cir.1994) (holding that "[a]n officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury."). The Court therefore finds that Defendants Sanford, Vazquez, and Delgado are not entitled to qualified immunity as a matter of law for their directed use of Tasers.

**d) Defendants Alonso, Bravo, Frazier, Graham, Orlandos, Thomas, Guzman, Lyons, and Esqueda are not entitled to qualified immunity as a matter of law.**

■ Defendants Alonso, Bravo, Frazier, Graham, Orlandos, Thomas, Guzman, Lyons, and Esqueda argue they entitled to qualified immunity because their actions did not violate clearly established law "with respect to the force which may be used during encounters inside a single man cell, with an uncooperative and combative inmate in the middle of a large scale jail disturbance." (MSJ at 19:11–17.) This is not persuasive. There is no requirement of a prior case "on all fours prohibiting that particular manifestation of unconstitutional conduct" to find a "clearly established" constitutional violation. *See Torres,* 648 F.3d at 1128; *see also Forsyth,* 472 U.S. at 535, n. 12, 105 S.Ct. 2806.

---

**2.** Two other Defendants who used Tasers, Galindo and McNicholas, prevailed at trial

and were not found liable for constitutional violations.

Upon consideration of the evidence presented at trial, the jury found that the kicks, punches, knee strikes, and other uses of force by defendant deputies were excessive and executed intentionally to cause pain. This proved that these defendants are not entitled to qualified immunity. *See Hudson,* 503 U.S. at 7–10, 112 S.Ct. 995. The Court therefore finds that Defendants Alonso, Bravo, Frazier, Graham, Orlandos, Thomas, Guzman, Lyons, and Esqueda are not entitled to qualified immunity as a matter of law.

6. **Defendants are not entitled to judgment as a matter of law as to Plaintiffs' *Monell* claim against the County of Los Angeles.**

■ To recover against a public entity defendant under § 1983, a plaintiff must prove either (1) an explicit wrongful government policy pronouncement or (2) a pattern of wrongful acts by governmental officials which are "so permanent and well-settled as to constitute an (unspoken) 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611, 635 (1978). Defendants argue that Plaintiff failed to prove that the County's policies caused the constitutional deprivations.

■ Plaintiffs met their burden of proof to establish a *Monell* claim. The evidence at trial proved that the Los Angeles Sheriff's Department tolerated the use of unconstitutional force at Men's Central Jail ("MCJ"), and gave deputies and supervisors license to use excessive force without fear of discipline. Plaintiffs provided evidence that Captain Cruz, a policy maker, perpetuated a culture where excessive force was encouraged, openly joked with the deputies about force, and promoted the practice of incomplete and ineffective investigations into deputy misconduct. Findings of the Citizen's Commission on Jail Violence ("CCJV") were also offered

and received into evidence. The Jury had the benefit of all of the evidence at trial and found that there was a strong enough pattern of wrongful acts by governmental officials to show that unconstitutional conduct was "so permanent and well-settled as to constitute an (unspoken) 'custom or usage' with the force of law." *Id.* at 690, 98 S.Ct. 2018.

The Court therefore finds that Defendants are not entitled to judgment as a matter of law on Plaintiffs' *Monell* claim against the County of Los Angeles.

## V. MOTION TO VACATE JUDGMENT AS TO MOVING DEFENDANTS AND FOR A NEW TRIAL FOR THESE DEFENDANTS AFTER RESOLUTION OF INTERLOCUTORY QUALIFIED IMMUNITY APPEALS

On July 23, 201.3, Appellant Defendants filed a Notice of Interlocutory Appeal of Denial of Qualified Immunity. (Docket No. 290.) This appeal is pending. (*Rodriguez,* Ninth Circuit Case No. 13–56292, Docket No. 14.) Appellant Defendants move to vacate this Court's Judgment, arguing that their notice of interlocutory appeal divested this Court of jurisdiction.

### A. STANDARD OF LAW

■ A court may provide relief from a final judgment if the judgment is void. Fed.R.Civ.P. 60(b)(4). "Pursuant to Rule 60(b)(4), a litigant may attack a judgment as void due to lack of subject matter jurisdiction." *Wages v. IRS,* 915 F.2d 1230, 1234 (9th Cir.1990); *see also Gonzalez v. Crosby,* 545 U.S. 524, 534, 125 S.Ct. 2641, 2649, 162 L.Ed.2d 480, 494 (2005) (noting that Rule 60(b)(4) "preserves parties' opportunity to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction").

■ Appellate courts have jurisdiction to hear an interlocutory appeal from a denial of qualified immunity when the question involves a matter of law. *See Forsyth,* 472 U.S. at 528, 105 S.Ct. 2806 (holding that a district court's denial of a claim of qualified immunity is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 "to the extent that it turns on an issue of law"); *see also Collins v. Jordan,* 110 F.3d 1363, 1370 (9th Cir. 1996). But, "[w]here the district court denies immunity on the basis that material facts are in dispute, [appellate courts] generally lack jurisdiction to consider an interlocutory appeal." *Collins,* 110 F.3d at 1370; *see also Johnson v. Jones,* 515 U.S. 304, 307, 115 S.Ct. 2151, 2153, 132 L.Ed.2d 238, 243 (1995). "If an interlocutory claim is immediately appealable, its filing divests the district court of jurisdiction to proceed with trial." *Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir.1992) (citation omitted). However, in the context of an interlocutory appeal based on qualified immunity, if a district court finds that defendants' claim is frivolous or has been waived and certifies such in writing, the district court maintains jurisdiction. *Id.* at 105.

## B. ANALYSIS

### 1. The Court Retained Jurisdiction Over Plaintiffs' 42 U.S.C. § 1983 Claims Against Appellant–Defendants

Defendants argue that their interlocutory appeal divested the Court of jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claims against Appellant Defendants because their claim was immediately appealable and the Court denied Plaintiffs' request to certify Defendants' appeal as frivolous. *Chuman,* 960 F.2d at 105.

■ However, Defendants' claim was not immediately appealable. The Court's pretrial summary judgment order denied Defendants' Motion for Summary Judgment because there was a genuine issue of material fact as to the individual defendants' entitlement to qualified immunity. (*See* Docket No. 261.) "An order denying qualified immunity on the ground that a genuine issue of material fact exists is not a final, immediately appealable order." *Maropulos v. County of Los Angeles,* 560 F.3d 974, 975 (9th Cir.2009) (citing *Johnson,* 515 U.S. at 319–20, 115 S.Ct. 2151).

The Court finds that it retained jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claims against Appellant Defendants.

### 2. The Court Retained Jurisdiction Over Plaintiffs' Cal. Civ.Code § 52.1 Claims Against Appellant Defendants

■ An appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225, 228 (1982). Defendants argue that Plaintiffs' Cal. Civ.Code § 52.1 claims are involved in the appeal because they, like the § 1983 claims, require finding a violation of constitutional rights.[3] Defendants conclude that the Court lacked jurisdiction over Plaintiffs' Cal. Civ.Code § 52.1 claims against Appellant Defendants.

■ California Civil Code § 52.1 claims are not subject to qualified immunity. *See e.g., Cousins v. Lockyer,* 568 F.3d 1063, 1072 (9th Cir.2009) ("California law is . . . clear that qualified immunity of the kind applied to actions brought under 42 U.S.C. § 1983 does not apply to actions brought under [Cal. Civil Code § 52.1].");

**3.** California Civil Code § 52.1 "permits an individual to sue for damages where his or her constitutional rights are violated." *City of Simi Valley v. Superior Court,* 111 Cal. App.4th 1077, 1085, 4 Cal.Rptr.3d 468 (2003).

*Venegas,* 153 Cal.App.4th at 1248, 63 Cal. Rptr.3d 741 (holding that qualified immunity under § 1983 does not apply to actions brought under § 52.1). Defendants appeal the Court's denial of qualified immunity and therefore the Cal. Civ.Code § 52.1 claims are not implicated in the appeal.

The Court finds that it had jurisdiction to proceed to trial on Plaintiffs' Cal. Civ. Code § 52.1 claims against Appellant Defendants.

### 3. The Court Retained Jurisdiction over Plaintiffs' 42 U.S.C. § 1983 and Cal. Civ.Code § 52.1 Claims Against Non–Appellant Defendants

Defendants argue that the Court lacked jurisdiction over Plaintiffs' California Civil Code § 52.1 claims even as to the non-appellant defendants because "the issue of whether non-Appellant Defendants used excessive force is also an issue embraced by the interlocutory qualified immunity appeal." (Motion to Vacate at 10:3–5.) However, there is no pending appeal pertaining to any Defendants based on § 51.2 or non-appealing Defendants. Therefore, the Court maintained jurisdiction over all claims against non-appellant Defendants.

### 4. Plaintiffs' Request for the Court to Rule Nunc Pro Tunc that Appellant Defendants' Appeal is Frivolous under *Chuman v. Wright* is Granted.

 Plaintiffs request for the Court to certify the Appellant Defendants' interlocutory appeal as frivolous *nunc pro tunc,* as of August 19, 2013. (Docket No. 653 at 12–14.)

Under *Chuman,* the district court is automatically divested of jurisdiction following an interlocutory appeal unless the court finds that defendants' claim is frivolous or has been waived and certifies such in writing. *Chuman,* 960 F.2d at 105. At the pretrial conference, this Court denied Plaintiff's motion to certify Defendants' appeal as frivolous under *Chuman.* (Docket Nos. 356, 293.)

During summary judgment proceedings, this Court denied Defendants' motions for summary judgment and found "genuine issues of material fact" as to Defendants' entitlement to qualified immunity. (Docket. No. 261 at 1–3.) Plaintiffs' legal theories were based on Defendants' intent to inflict pain and corporal punishment and willfully failure to intervene in other officers' excessive force. These theories arose from clearly established constitutional violations which, if proven, would disqualify a defendant from qualified immunity protections. *Hope v. Pelzer,* 536 U.S. 730, 738, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666, 677 (2002); *Deorle v. Rutherford,* 272 F.3d 1272, 1285 (9th Cir.2001). In its summary judgment order, this Court found evidence establishing a factual dispute as to whether or not Defendants were liable under Plaintiffs' legal theories—and, similarly, a factual dispute regarding whether or not Defendants should be entitled to qualified immunity. Because the Court's denial of qualified immunity was based on a factual dispute requiring resolution by a trier of fact; there was no "final decision" within the meaning of 28 U.S.C. § 1291. The Court's denial of summary judgment should therefore not have been subject to an interlocutory appeal. *Johnson v. Jones,* 515 U.S. at 319–20, 115 S.Ct. 2151 ("holding that a defendant, entitled to invoke a qualified immunity defense, may not appeal district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."); *see also Johnson v. Bay Area Rapid Transit Dist.,* 724 F.3d 1159, 1164 (9th Cir.2013) (holding that Ninth Circuit "jurisdiction over [summary judgment] appeals is limited: we may review only the district court's legal conclusion that an officer is not entitled to qualified immunity.")

In holding that qualified immunity is not immediately appealable where the decision is based on a genuine issue of material fact, the Supreme Court anticipated cases precisely like the one now before this Court. *Johnson v. Jones*, 515 U.S. at 316, 115 S.Ct. 2151 ("Many constitutional tort cases ... involve factual controversies about, for example, intent—controversies that, before trial, may seem nebulous.") Such cases are not immediately appealable.

After further analysis and consideration, the Court finds the Appellate Defendants' appeal was frivolous and wholly without merit. Therefore, the Court grants Plaintiffs' request and certifies Appellant Defendants' appeal "frivolous" under *Chuman*.

## VI. VACATE PUNITIVE DAMAGES

### A. FACTS RELATING TO PUNITIVE DAMAGES

For those Defendants that the jury found liable for conduct that was malicious, oppressive or in reckless disregard for the rights of one or more of the Plaintiffs, the jury was given the opportunity to determine the propriety of and the amount of punitive damages. (Docket No. 602.) The parties presented evidence regarding the propriety of punitive damages under § 1983, including evidence of Defendants' ability to pay punitive damages awards, to the jury. (Docket No. 612.) After arguments were heard and evidence was presented, the jury returned a verdict imposing punitive damages against five individual Defendants in the following amounts: (1) Ret. Capt. Daniel Cruz-$75,000; (2) Lt. Christopher Blasnek—$60,000; (3) Sgt. Michel McGrattan—$30,000; (4) Sgt. Matthew Onhemus—$30,000; and (5) Sgt. Kelley Washington—$15,000. (Docket No. 606 [Redacted Special Verdict Form—Punitive Damages].)

Defendants Cruz, Blasnek, McGrattan, Onhemus, and Washington filed a Motion to Vacate Punitive Damages or Alternatively for Remittitur or New Trial on Punitive Damages ("Motion to Vacate Punitive Damages"). (Docket No. 640.)

## VII. STANDARD OF LAW

█ "The Court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court...." Fed. R.Civ.P. 59(a)(1). "A trial court may grant a new trial ... to prevent a miscarriage of justice...." *Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075, 1087 (9th Cir.2009). Further, Federal Rule of Civil Procedure 60(b)(4) provides for relief from a final judgment if it is void. This rule "preserves parties' opportunity to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction...." *Gonzalez v. Crosby*, 545 U.S. 524, 534, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005).

## VIII. ANALYSIS

Defendants raise two arguments supporting their request to vacate punitive damages. First, Defendants contend that this Court was stripped of jurisdiction over Plaintiffs' § 1983 Claims. Second, Defendants contend that the amount of punitive damages was excessive in relation to Defendants' ability to pay. Neither argument is persuasive.

### 1. The Court was not divested of jurisdiction following Defendants' Notice of Appeal

Defendants argue that the trial in this case was conducted without jurisdiction and, therefore, the Court's Judgment is without effect and the punitive damages awarded are void. (Docket No. 640 at 4–

8.) Based on the legal analysis discussed earlier in this order, *see supra*, P.IV, this Court retained jurisdiction following Defendants' interlocutory appeal. The Court certifies Appellant Defendants' appeal as "frivolous." *Chuman*, 960 F.2d at 105.

## 2. The Punitive Damages Against Defendants Were Not Excessive

 A "jury may award punitive damages under Section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir.1991). An award that is "grossly excessive" violates the Due Process Clause because it denies individuals fair notice of the penalty to which his conduct could expose her. *BMW v. Gore*, 517 U.S. 559, 574, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809, 825–826 (1996). To determine the constitutionality of an award of punitive damages, a court must refer to the three *BMW* guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 775 (9th Cir.2005) (citing *BMW*, 517 U.S. at 574–75, 116 S.Ct. 1589). Defendants' Punitive Damages Motion fails to show that the punitive damage awards are unconstitutionally excessive.

 Defendants argue that the punitive damages awarded exceed Defendants' ability to pay, and therefore the awards are excessive. This is not persuasive. *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1, 22 (1991) (holding that in determining punitive damages, "the factfinder must be guided by more than the defendant's net worth"). In fact, Defendants' ability to pay is a factor that is given relatively low importance when compared to other *BMW* guideposts. See *Arizona v. ASARCO LLC*, 733 F.3d 882, 886 (9th Cir.2013) *reh'g en banc granted*, 755 F.3d 1044 (9th Cir. 2014) (holding that "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."). Defendants offer no further arguments to show that the punitive damage awards are excessive.

As persuasively argued in Plaintiffs' Opposition brief, each of the *BMW* factors favors finding that the punitive damages awarded in this case are reasonable. First, the Defendants' conduct was found to be reprehensible (Defendants acted maliciously and directed actions which broke bones, caused blunt head trauma, and inflicted other physical harm upon Plaintiffs). Second, there was no major disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award (the combined punitive damages awarded ($210,000) represented a fraction of the $740,000 awarded as compensatory damages). And, third, there is no marked difference between the punitive damages awarded by the jury and the penalties authorized in comparable cases (Plaintiffs cite several cases authorizing more or similar punitive damage awards in comparable cases).

 In the Punitive Damages Motion, as was done at trial, Defendants provide single-page declarations listing general monthly "income," monthly "expenses," total "assets," and total "liabilities." (*See* Declarations attached to Defendants' Motion to Vacate Punitive Damages (Docket Nos. 640, Exhs. 2, 3, 4, 5, 6)), and argue that these figures demonstrate that the punitive damages are disproportionate to

each individuals' net worth. Defendants argue that under California law, punitive damage "awards generally are not allowed to exceed 10 percent of the net worth of the defendant." *Michelson v. Hamada,* 29 Cal.App.4th 1566, 1596, 36 Cal.Rptr.2d 343, 359 (1994). This is unpersuasive for two reasons. First, California law does not apply because punitive damages in this case were awarded under federal law. Second, "a California court may set aside a punitive damage award only where the award 'appears excessive, or ... is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice.'" *Boyle v. Lorimar Productions, Inc.,* 13 F.3d 1357, 1360 (9th Cir. 1994) (citing *Neal v. Farmers Ins. Exchange,* 21 Cal.3d 910, 148 Cal.Rptr. 389, 399, 582 P.2d 980, 990 (1978)). The California "'passion and prejudice' standard does not occur in a vacuum, but is measured against the identical criteria utilized by the jury: reprehensibility of defendant's misdeeds, the ratio between the compensatory and punitive damages, and the ratio between the damages and the defendant's net worth." *Id.* at 1360 (citing *Las Palmas Assoc. v. Las Palmas Ctr.,* 235 Cal.App.3d 1220, 1 Cal.Rptr.2d 301, 323 (1991)). At trial, Defendants provided evidence of their net worth and, after considering this evidence, the jury awarded punitive damages. With full consideration of the Defendants' evidence and arguments in the Punitive Damages Motion, and the evidence underlying Defendants' liability, the Court finds that the jury's award of punitive damages was reasonable.

Further, under federal law, a jury may consider the ability of a Defendant to pay the award to determine whether an award is reasonable. *Tri–Tron Intern. v. Velto,* 525 F.2d 432, 438 (9th Cir.1975) (finding that "ability to pay is of some importance"). The Court entered a special jury instruction guiding the jury as to this law. (Docket No. 602 (instructing the jury

"any award you impose may not exceed the Defendant's ability to pay.").) Defendants failed to prove that the punitive damage awards exceeded the Defendants' abilities to pay despite providing evidence to the jury about Defendants' net worth. A new trial is thus not necessary to "prevent a miscarriage of justice." *Tortu,* 556 F.3d at 1087. Defendants' Punitive Damages Motion is DENIED.

## IX. NEW TRIAL PURSUANT TO F.R.C.P. 59(A)

### X. JURY BIAS CLAIM

Defendants brought their Motion for New Trial Pursuant to Rule 59(a) on the grounds that Juror No. 5 was impliedly biased. Juror No. 5 was questioned on the third and final day of voir dire. (*See* Docket Nos. 487–489; Motion for New Trial at 1.) During his questioning, Juror No. 5 disclosed the following associations that could create conflicts:

- His mother is law professor and former federal prosecutor Laurie Levenson. (Motion for New Trial at 2:8–9.)
- He is "close family friends" with Richard Drooyan, the head of the LAPD Police Commission. (*Id.,* Exh. R at 5:25, 6:1, 8:21–25.)
- He is "very close friends" with Obie Anthony, a wrongfully convicted former-inmate who is not a party to this lawsuit. (*Id.,* Exh. R at 6:1–4, 8:9–15.)
- His mother is a "friend" of Ronald Kaye, Plaintiffs' counsel. (*Id.,* Exh. R at 5:15–20.)

Also during initial questioning, Juror No. 5 stated that he does not have any bias against law enforcement officers and felt "that their testimony lies in the same kind of footing that anyone else's does." (*Id.,* Exh. R at 6:16–19.) Juror No. 5 also stated that he had not formed any opinions about the parties or attorneys that would

affect his ability to serve on the jury. (*Id.*, Exh. R at 18:24–25.) Juror No. 5 indicated that he did not recognize any of the potential witness' names when they were read by the Court. Following the completion of voir dire, Juror No. 5 was selected to serve on the jury. (*See* Docket No. 489.)

The next day, in a written note to the Court, Juror No. 5 made known that he had forgotten to disclose that his father is an entertainment law attorney and the Vice President of the ACLU. (Opposition to Defendant's Motion for New Trial Pursuant to F.R.C.P. Rule 59(a) ("Opp'n"), Exh. B at 10:20–23.) The Court questioned Juror No. 5 outside the presence of the rest of the jury regarding his note. (*See* Docket No. 505.) When asked why he did not disclose his father's position at the ACLU during voir dire, Juror No. 5 explained that he had forgotten to mention it because his father primarily works within entertainment law and most of the time he does not work with the ACLU. (Opp'n, Exh. B at 9:18–25.) No questions had been asked about the ACLU at voir dire.

Defendants raised the issue of juror bias in a "Pocket. Brief Re: Juror No. 5's Continued Service" filed and requested that Juror No. 5 be excused for implied bias. (Docket No. 495.) Upon considering Defendants' request, the Court found no actual or implied bias with respect to Juror No. 5 and thus no proper basis to challenge Juror No. 5 for cause. Defendants unsuccessfully raised the issue of Juror No. 5's bias several more times during trial. (*See* Docket Nos. 500, 502, 553, and 557.) Defendants raise the same issue again.

## XI. STANDARD OF LAW

 Federal Rule of Civil Procedure 59 permits a motion for new trial to be granted "for any of the reasons for which new trials have heretofore been granted in actions at law." Fed.R.Civ.P. 59(a). In ruling on a motion for a new trial, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir. 1987). Courts have granted new trials based on Findings of implied bias. *See, e.g., Dyer v. Calderon,* 151 F.3d 970 (9th Cir.1998) (finding implied bias and holding that no "criminal defendant might lawfully be convicted by a jury tainted by implied bias").

## XII. ANALYSIS

Defendants raise two arguments to support their request for a new trial on the basis of juror bias. First, Defendants argue that Juror No. 5 was impliedly biased because he had personal relationships with individuals who had personal and professional stakes in the outcome of this trial. Second, Defendants argue that Juror No. 5 was impliedly biased because he withheld information during voir dire that would have constituted a valid basis for a challenge for cause. The Court does not find either argument persuasive.

### 1. Juror No. 5's Personal Relationships Do Not Support a Finding of Implied Bias

 A court may presume bias when there is a "potential for substantial emotional involvement, adversely affecting impartiality" inherent in certain relationships. *Tinsley v. Borg,* 895 F.2d 520, 527 (9th Cir.1990). A court may also presume bias "in those extreme circumstances where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances."

*Fields v. Brown,* 503 F.3d 755, 770 (9th Cir.2007). Neither is the case here.

There is no evidence that Juror No. 5 had any connections to this litigation. There were no "extraordinary" circumstances justifying a finding of implied bias. *See Dyer,* 151 F.3d at 981 ("In extraordinary cases, courts may presume bias based on circumstance."). Defendants contend that Juror No. 5 had an interest in a Plaintiffs' verdict because his parents have public positions criticizing the Sheriff's Department. (*See* Motion for New Trial at 11–13.). However, there is simply no evidence that either Juror No. 5 or his parents had any interest in the outcome the litigation. *Cf. Dyer,* 151 F.3d at 982.

The Court finds that Juror No. 5's relationships do not demonstrate implied bias. *See United States v. Plache,* 913 F.2d 1375, 1378 (9th Cir.1990) (finding no implied bias where no direct relationship between the juror and the case existed).

**2. Juror No. 5's Omissions During Voir Dire Do Not Support a Finding of Implied Bias**

■ To justify a new trial based on a juror's responses in voir dire, a party must demonstrate that the juror failed to answer a material question honestly and that a correct response would have provided a basis for a challenge for cause. *See McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663, 671 (1984) (finding no implied bias where a juror mistakenly but honestly responded to voir dire questioning); *see also Dyer,* 151 F.3d at 983–984 (finding a "rare case" of implied juror bias where a juror intentionally lied during voir dire "materially and repeatedly in response to legitimate inquiries about her background").

■ Defendants argue that Juror No. 5 intentionally omitted that his father is a prominent litigator and the Vice–President of the ACLU. (59(a) Motion at 9:27–28–10:1–4.) However, facts suggest that Juror No. 5's omission was the result of inadvertence and not dishonesty. Juror No. 5 was never asked about his father's profession or associations. In fact, Juror No. 5 voluntarily brought his father's association with the ACLU to this Court's attention. There is no evidence that Juror No. 5's father is actually involved with ACLU investigations or litigation. Moreover, neither party argues that the ACLU was ever mentioned in the presence of the jury, and the excerpts of the CCJV Report approved by the Court do not reference the ACLU (*see* Dkt. Nos. 362 & 449). The only potential witness listed who was associated with the ACLU never testified at trial nor was that witness' association with the ACLU mentioned in the presence of the jury. Therefore, Juror No. 5's father's connection to the ACLU would not have provided a valid basis for a challenge for cause at voir dire.

■ An honest omission during voir dire that would not have provided a valid basis for a challenge for cause is not grounds for a new trial. *See McDonough,* 464 U.S. at 555, 104 S.Ct. 845 ("To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question is to insist on something closer to perfection than our judicial system can be expected to give.") Therefore, the Court finds that Juror No. 5's failure to disclose his father's associations during voir dire does not support a finding of implied juror bias or a basis for a new trial.

**XIII. CONCLUSION**

Defendants' Motion for Judgment as a Matter of Law, Motion to Vacate Judgment and for New Trial, Motion for New Trial Pursuant to Fed.R.Civ.P. 59(a), and Motion to Vacate Punitive Damages or

Remittitur or New Trial on Punitive Damages are DENIED.

**IT IS SO ORDERED.**